UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROMAN T. GONZALES,<br><br>Plaintiff,<br><br>v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br>Defendant. | Case No. 4:20-cv-00102-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion to Compel (Dkt. 20). For the reasons discussed below, the Court grants the motion in part and denies it in part.

## BACKGROUND[1]

Plaintiff, a Latino of Mexican descent, began working for Defendant in February 2005. In July 2005, Plaintiff was moved to Security and placed in the

---

[1] The facts set forth in this background section are based on the allegations in Plaintiff's complaint (Dkt. 1).

**MEMORANDUM DECISION AND ORDER - 1**

position of a Security Police Officer (SPO). When he became a SPO, Plaintiff informed Defendant that he had lower back problems, and that he has had these problems since he was a child. In 2011, Plaintiff saw a pain specialist regarding his lower back problems and informed Defendant of that fact.

In 2014, Plaintiff was injured, aggravating his back pain. Dr. Johns, who is in Defendant's Occupational Medical Program (OPM), placed Plaintiff on short-term disability to allow him to recover and get necessary treatment. After consulting with specialists, Plaintiff, who was in his late 20's, learned his back showed degradation signs of a much older man. Plaintiff went to a pain management specialist to help cope with his back pain.

Plaintiff returned to work with the approval of OPM to perform his normal job duties. Plaintiff was allowed to use pain management medication as long as he followed certain parameters regarding when he took the medication. Plaintiff followed the parameters given by OPM regarding the timing of when he took the pain medication.

In 2015, Plaintiff was placed in the Human Reliability Program (HRP), which includes additional standards an employee must meet due to specific job duties. Dr. Johns approved Plaintiff for HRP work, knowing of Plaintiff's pain medication use, and this approval was again based on specific parameters as to

when Plaintiff took the medication.

Plaintiff continued in HRP in 2016 and 2017, obtaining approval of his HRP status from the OPM Director, Dr. Stewart Curtis. Plaintiff continued to comply with the parameters given by OPM regarding taking the pain medication.

At the end of 2017 or beginning of 2018, following a drug screening, a new doctor in OPM, Dr. Martin Mangan, required Plaintiff to report his confidential medical information to others, and threatened to disclose his confidential medical information to Plaintiff's managers. Plaintiff's drug screening results were within the limits required for HRP work, and Plaintiff continued to comply with the parameters of OPM's instructions regarding taking his pain medication.

Plaintiff complained to Defendant about his concerns that Dr. Mangan had targeted him due to his race, national origin and/or medical condition. Plaintiff was told that Dr. Mangan had given incorrect instructions about Plaintiff and his medical condition and that Dr. Mangan's actions had been in error. Dr. Curtis approved Plaintiff to continue his HRP work.

Plaintiff requested not to be assigned to Dr. Mangan in the future and asked to be assigned to Dr. Curtis, with whom Plaintiff had always dealt with previously. Despite this, Dr. Mangan contacted Defendant's Employee Assistance Program (EAP) HRP counselor (who had to approve Plaintiff for HRP work for

psychological purposes) and informed EAP that he believed Plaintiff was abusing his pain medication. This resulted in the revocation of Plaintiff's HRP approval status. The revocation of Plaintiff's HRP approval in turn meant that Plaintiff could no longer perform his job. Dr. Mangan also asserted that Plaintiff could no longer take the pain medication for his back, which had allowed Plaintiff to perform his job duties and function.

Defendant insisted that, to remain employed, Plaintiff would have to sign a two-year Statement of Understanding (SOU) agreement, stating he would no longer take any medication at all and that he would attend counseling weekly. Because Plaintiff needed the medication to function, he did not agree to sign the SOU. Plaintiff also noted on the SOU that he was in a pain management contract with his pain management doctor. Plaintiff also requested Defendant consult with his pain management doctor so that Defendant could understand the treatment Plaintiff was undergoing and help Plaintiff to reach a solution with Defendant in order to be able to resume his work. Defendant did not contact Plaintiff's doctor as requested.

In November 2019, Plaintiff was denied HRP certification to continue in his job due to his need for medication, despite the fact that Defendant had been aware of his medication since 2011 and had approved Plaintiff's HRP work since 2015.

Defendants took the position that new federal regulations prohibited employees from working in HRP work unless they were 100% fit for duty, and that long-term use of prescription drugs made an employee unfit for duty. Plaintiff alleges that this is false, and pretextual. An independent medical examiner and Plaintiff's personal physicians explained that Plaintiff was able to perform the essential functions of his job with or without reasonable accommodation.

Plaintiff requested the reasonable accommodation of continuing to perform his job duties and being permitted to take his medication in order to allow him to work and function, based on parameters that the medication would not interfere with his work. Defendant asserted the only accommodation available was reassignment to an open position, and that Plaintiff would have to apply for open positions like any other employee seeking a difference job, and let Defendant know of his interest if he applied for a position.

Plaintiff later learned that other individuals, including his managers, who did not have a need to know about his medical condition, had not only been informed of his condition, but had also been informed that Plaintiff failed drug tests and that he had a drug addiction problem. At least one of those managers told other employees that Plaintiff had a drug addiction problem. These managers and other employees were given this information even though they had no need to know.

Further, Plaintiff alleges that the information was false as Plaintiff did not have a drug addiction and his test results had been well within the requirements for use of prescription medication while off duty.

In November 2018, Plaintiff filed a complaint with HR about the disclosure of his personal medical information and the false and disparaging statements made by managers regarding their perception that Plaintiff had a drug addiction. Defendant did not investigate the matter. Instead, in December 2018, Defendant gave Plaintiff a 30-day notice of termination, stating that if he did not find another position with Defendant within 30 days, his employment would end. Plaintiff was told by Defendant that he would have to compete for a position just like any other employee or non-employee that applied.

Plaintiff applied for multiple positions for which he was qualified but was never even given an interview. Plaintiff also requested training for positions for which he did not have the qualifications—something Defendant had offered to Plaintiff previously, as an accommodation—but Defendant refused to provide the training.

Plaintiff was discharged by Defendant in January 2019. He subsequently brought this action alleging claims for disability discrimination/failure to accommodate, race/national origin discrimination, unlawful disclosure of

confidential medical information, and retaliation.

# ANALYSIS

Plaintiff seeks to compel Defendant to respond to Plaintiff's Interrogatories 13, 14, 15, 18, 19, 20, 23, 24, 25, and 26. Defendant objected to these Interrogatories on various grounds. At issue in the pending motion are Defendant's objections that the information sought is overly broad, not relevant, and not proportional to the case; and that the information is protected from disclosure under the Federal Privacy Act.

### A. Appropriate Scope of Comparator Information

In the Interrogatories, Plaintiff seeks various information regarding other employees that Plaintiff contends are similarly situated.

Evidence of similarly situated employees is relevant and probative of both whether Plaintiff has met his initial burden of establishing a prima facie case of discrimination, as well as whether the reason given by Defendant for the adverse employment action against Plaintiff is pretextual. *See Hawn v. Executive Jet Mgmt., Inc.,* 615 F.3d 1151, 1156 (9th Cir. 2010) (a plaintiff can show an inference of discrimination through "comparison to similarly situated individuals, or any other circumstances 'surrounding the adverse employment action [that] give rise to an inference of discrimination'") (citations omitted)); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("A showing that [employer] treated

similarly situated employees outside [plaintiff]'s protected class more favorably would be probative of pretext.").

"[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641. "[W]hether two employees are similarly situated is ordinarily a question of fact." *Beck v. United Food & Commercial Workers Union Local 99*, 506 F.3d 874, 885 n.5 (9th Cir. 2007). "The employees' roles need not be identical; they must only be similar 'in all material respects.' " *Hawn*, 615 F.3d at 1157 (quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). "Materiality will depend on context and the facts of the case." *Id.*

Here, Plaintiff alleges that he was told that he was removed from his position because his HRP certification had been revoked. He also continued to receive notices from Defendant that his ongoing removal from his position was due to lack of HRP certification. (*See* Dkt. 21 at 4.)

Defendant also provided Plaintiff with a 2014 article from an academic journal and told Plaintiff that this article is what Defendant was relying on in deciding to suspend Plaintiff from his position. The article provides, in relevant part:

> Acute or chronic opioid use is not recommended for patients who perform safety sensitive jobs. These jobs include operating motor vehicles, other modes of transportation, forklift driving, overhead crane operation, heavy equipment operation, sharps work (eg, knives,

box cutters, needles), work with injury risks (eg, heights), and tasks involving high levels of cognitive function and judgment.

(Dkts. 20-5 at 2, 20-6.)

Plaintiff contends that, based on the standard set out in the article, the appropriate scope of comparator employees for which he is entitled to obtain discovery is all employees in safety sensitive positions, which Plaintiff contends covers essentially all of Defendant's employees. Defendant, on the other hand, contends that the scope of comparator discovery should be limited to SPOs only.

The Court finds the scope proposed by Plaintiff to be overly broad and not proportional to the case, and the scope proposed by Defendant to be too narrow. Although Defendant purportedly relied on the article in suspending Plaintiff, it was the revocation of Plaintiff's HRP certification that led to his suspension. Thus, allowing discovery regarding other employees who were in HRP positions is appropriate. Further, limiting discovery to only SPOs, as proposed by Defendant, is too narrow in light of the reasoning given by Defendant for suspending Plaintiff from his position—the revocation of Plaintiff's HRP certification.

The Court also finds that Plaintiff is entitled to discovery regarding HRP employees who used opioids or other prescription drugs for which HRP employees were tested, regardless of whether the use was consistent with their prescription, the standards applied to the use, and whether they were tested for the drug and

found to be outside their prescribed use or representations to Defendant's medical personnel.

### B. Appropriate Timeframe

As to the timeframe for which discovery should be allowed, the Interrogatories seek information from 2010 to the present. However, in Plaintiff's reply brief, he agrees to narrow the timeframe of the requests to 2015 to present, explaining that this is the timeframe during which he has been subject to drug testing and reporting. (*See* Dkt. 30 at 6.) Defendant seeks to limit the timeframe even further to 2017 to present, explaining that it began testing for opioids in 2017.

The Court finds that the period of time during which Plaintiff has been subject to drug testing and reporting is the appropriate timeframe for Plaintiff's requests. This information is relevant, not unduly burdensome, and proportional to the case. Accordingly, the Court will limit the timeframe of the interrogatories to 2015 to present. Finally, such disclosure by Defendant shall be subject to the provisions of the Protective Order (Dkt. 15).

### C. Privacy Act

Defendant contends that, as a federal contractor, it is subject to the Federal Privacy Act, 5 U.S.C. § 552a *et seq.*, and that it is thus prohibited from producing the information requested in the Interrogatories without a Court order authorizing

production of the requested information.[2] Plaintiff takes the position that the Protective Order (Dkt. 15) is sufficient to allow disclosure under the Privacy Act and that an additional order is not required.

The Court need not decide this dispute because this Memorandum Decision and Order compels Defendant to produce the information requested in the Interrogatories, subject to the limitations discussed above, and subject to the provisions of the Protective Order (Dkt. 15).

## ORDER

**IT IS ORDERED that:**

1.  Plaintiff's Motion to Compel (Dkt. 20) is GRANTED in part and DENIED in part. Defendant is directed to respond to Interrogatories 13, 14, 15, 18, 19, 20, 23, 24, 25, and 26 with the limitations set forth above and subject to the provisions of the Protective Order (Dkt. 15).

---

[2] The Privacy Act provides, in relevant part,

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . pursuant to the order of a court of competent jurisdiction . . . .

5 U.S.C. § 552a(b)(11).

2. Plaintiff's Motions to Seal (Dkts. 22, 29) are GRANTED.

3. Defendant's Motion to Seal (Dkt. 23) is GRANTED.

DATED: November 3, 2021

B. Lynn Winmill
U.S. District Court Judge