UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ROMAN T. GONZALES,

Plaintiff,

v.

BATTELLE ENERGY ALLIANCE, LLC,

Defendant.

Case No. 4:20-cv-00102-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Before the Court is Defendant Battelle Energy Alliance, LLC's Motion in Limine to Limit Testimony of Dallas Rindfleisch (Dkt. 70). For the reasons explained below, the Court will partially grant and partially deny the Motion.

## BACKGROUND[1]

Roman Gonzales was employed as a security officer with Battelle Energy Alliance, LLC ("BEA") from July 2005 until January 2019. During that time, Gonzales suffered chronic back pain from a pre-existing injury. To manage his pain, Gonzales used prescription pain medications. BEA was aware that Gonzales used pain medications but allowed him to continue working as a security officer so

[1] For purposes of placing the present motion in context, the Court recites the allegations set forth in the plaintiff's Complaint (Dkt. 1).

long as he complied with certain parameters imposed under BEA's Occupational Medical Program (OMP).

In 2015, Gonzales was placed in the Human Reliability Program (HRP), a program created by the Department of Energy to ensure that employees who have access to certain nuclear materials "meet the highest standards of reliability and physical and mental suitability." 10 C.F.R. § 712.1. Employees like Gonzales who are subject to the HRP requirements must maintain "HRP certification" in order to keep their jobs. 10 C.F.R. § 712.10. Gonzales obtained HRP certification and remained in the HRP through 2016 and 2017. During that period, Dr. Stewart Curtis, the OMP Director, oversaw and approved Gonzales' HRP certification, although he was aware of Gonzales' use of prescription medications.

In early 2018, however, a new doctor with the OMP, Dr. Martin Mangan, raised concerns with Gonzales' use of pain medications. Dr. Mangan claimed that Gonzales was abusing his pain medications, and Gonzales' HRP approval was subsequently revoked. To regain HRP approval, BEA explained, Gonzales would have to attend weekly counseling sessions and commit to not using pain medications for two years. Gonzales refused, explaining that he would not be able to perform his job duties without managing his pain.

Unable to keep working as a security officer without his medical certifications, Gonzales applied for several other positions with BEA. Each of his

applications was rejected, and ultimately, in January 2019, BEA terminated his employment.

In February of 2020, after exhausting his administrative remedies, Gonzales filed this lawsuit against BEA in federal court. Gonzales asserts six claims under both federal and state law:

1. Disability Discrimination/Failure to Accommodate under the Americans with Disabilities Act (ADA) and the Idaho Human Rights Act (IHRA);
2. Race/National Origin Discrimination in Violation of Title VII and the IHRA;
3. Race Discrimination in Violation of 42 U.S.C. § 1981;
4. Unlawful Disclosure of Confidential Medical Information in Violation of ADA and the IHRA;
5. Retaliation in Violation of ADA and the IHRA; and
6. Retaliation in Violation of Title VII and the IHRA.

Discovery is closed and trial is set to begin on August 12, 2024. BEA has filed a Motion in Limine to Limit Testimony of Dallas Rindfleisch (Dkt. 70). The Motion is fully briefed and ripe for decision.

## LEGAL STANDARD

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, they are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Rulings on motions in limine are preliminary opinions that are "entirely within the discretion of the district court."

*Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Further, such rulings are provisional and therefore "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the Court will entertain objections on individual proffers as they arise, even though the proffer falls within the scope of a denied motion in limine. *See Luce*, 469 U.S. 38 at 41–42 ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

**ANALYSIS**

The issue before the Court is whether to exclude or limit the testimony of Dr. Dallas Rindfleisch. In an Expert Witness Disclosure served on June 18, 2021, Gonzales identified Dr. Rindfleisch as a non-retained expert who will testify at trial. *Young Decl.*, Ex. A, Dkt. 70-3. Dr. Rindfleisch, who was Gonzales' primary healthcare provider from at least November 2016 to January 2021, is expected to testify on the following subjects:

- His diagnosis and treatment of Gonzales, including medications prescribed;
- The actions and preventative measures he takes when treating chronic pain with opioid medications, including drug testing, treatment agreements, etc.;
- His opinion regarding the parameters of safe use of opioids for chronic pain and his opinion that Gonzales was using them in compliance with the safety parameters;
- Whether he ever had concerns or suspicions that Gonzales was abusing opioids; and

- The lack of any contact by BEA representatives regarding Gonzales' use of opioids for chronic pain.

*Id.* ¶¶ (a)–(e).

BEA objects to Dr. Rindfleisch's proposed testimony on three grounds: (1) the failure to provide a full expert witness report under Federal Rule of Civil Procedure 26(a)(2)(B); (2) lack of relevance; and (3) Dr. Rindfleisch's lack of regulatory expertise. The Court will address each objection, in turn.

**1. Failure to Provide an Expert Witness Report**

Expert witness testimony must be disclosed prior to trial. The degree of detail required in a disclosure, however, depends on the nature of the expert testimony. If an expert is "retained or specifically employed to provide expert testimony in the case," the party calling the witness must provide a written report containing a detailed description of the expert's expected testimony and qualifications. FED. R. CIV. P. 26(a)(2)(B). The disclosure obligations for *non-retained* experts, however, are less burdensome—the party must only identify the subject matter of the expert's testimony and provide a summary of the facts and opinions he or she will express. FED. R. CIV. P. 26(a)(2)(C).

When a treating physician testifies to their diagnosis, treatment, and care of a person, or to any medical opinions they formed during the course of that treatment, the physician is viewed as a non-retained expert. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). Thus, a treating physician like

Dr. Rindfleisch need not comply with the more demanding disclosure requirements of Rule 26(a)(2)(B) unless he intends to "render expert testimony beyond the scope of the treatment rendered." *Id.*

BEA argues that, because Gonzales did not produce a written expert report, Dr. Rindfleisch should only be allowed to testify to his diagnosis, treatment, and care of Gonzales, as well as to any opinions he formed during the course of treatment. *Def.'s Memo. in Supp.* at 4, Dkt. 70-1. Gonzales agrees in large part, explaining that Dr. Rindfleisch "will only testify as to his own treatment of Plaintiff, his medical opinions regarding Plaintiff, and Plaintiff's medical conditions, developed as a result of and in the course of treating Plaintiff." *Pl.'s Memo. in Opp.* at 2, Dkt. 71. Based on that description of the expected testimony, it is difficult to see any daylight between the parties' positions on this issue.

However, one of the subjects of testimony identified in Gonzales' Expert Witness Disclosure does appear to fall outside the scope of the treating physician exception to the Rule 26(a)(2)(B) disclosure requirements. Namely, Dr. Rindfleisch intends to testify to his opinion "regarding the parameters of the safe use of opioids for chronic pain[.]" As a treating physician, Dr. Rindfleisch is limited to testifying to his diagnosis, treatment, and care of Gonzales and any opinions he formed during the course of treatment. That means he may testify about the safe-use parameters that he imposed on Gonzales in the course of treatment, why he used those

parameters, and whether Gonzales complied with them. Dr. Rindfleisch may not, however, offer his own detached expert opinion about the best practices for safely using or prescribing opioid pain medications, except within the context of his use of those parameters and best practices in treating Gonzales.

**2. Relevance**

BEA spends the lion's share of its brief arguing that Dr. Rindfleisch's testimony is irrelevant. The Court disagrees. Dr. Rindfleisch's anticipated testimony is relevant to several material issues in this case.

To succeed on several of his claims, Gonzales must prove that he was qualified to perform his job as a security officer. *See, e.g.*, 9th Cir. Model Civil Jury Instr. No. 10.1 (Title VII), 12.7 (ADA). To make that showing, he must demonstrate that, with or without reasonable accommodations, he was capable of performing the "essential functions of employment." 9th Cir. Model Civil Jury Instr. No. 12.7. He must also demonstrate that he satisfied all "other job-related requirements," such as maintaining HRP certification. *Id.*

Dr. Rindfleisch's anticipated testimony is relevant to whether Gonzales was capable of performing his job while on prescription pain medications. In BEA's own words, the ability to perform the essential functions of one's job is necessary, although not alone sufficient, for a person to be a "qualified individual" under the ADA. Dr. Rindfleisch's testimony arguably supports Gonzales' position that his

monitored use of pain medications in compliance with all safety parameters enabled him to continue performing his work at BEA, despite his chronic pain. That testimony—even if not *alone* sufficient to prove that Gonzales was a "qualified individual"—has at least some bearing on a material issue in this case.

Dr. Rindfleisch's testimony is also relevant to whether Gonzales satisfied the "other job-related requirement[]" of remaining eligible for medical certifications as required by federal law. BEA seems to argue that this is a non-issue because its own medical personnel "deemed [Gonzales] unfit for medical certification under the standards of 10 CFR 1046 and 10 CFR 712." *Def.'s Reply* at 3, Dkt. 73. That may be true, but the Court cannot simply assume the correctness of BEA's determination. Indeed, the question of whether Gonzales' long-term use of pain medications justified the revocation of his medical certifications is a hotly disputed issue in this case. *See generally Pl.'s Memo. in Opp.*, Dkt. 71; *Answer* ¶ 29, Dkt. 3 ("Gonzales's long-term use of opioid pain medication made him unable to medically qualify as a SPO under the applicable regulatory standard."). And it is an issue that Dr. Rindfleisch's testimony may shed light on.

Dr. Rindfleisch's testimony is also relevant to other material issues in this case. For example, he intends to testify that BEA's medical professionals never consulted him regarding Gonzales' prescription drug use—a fact that arguably corroborates Gonzales' theory that his use of medications was merely a pretext under

which BEA terminated his employment. *See Compl.* ¶ 29, Dkt. 1. Gonzales also claims that BEA failed to accommodate him by providing an alternative employment position. And, to make that showing, Gonzales must show that he was capable of performing the essential functions of the alternative positions for which he applied—another issue upon which Dr. Rindfleisch's testimony might bear.

Finally, at the very least, Dr. Rindfleisch's testimony is relevant to provide context for other evidence that will be presented at trial. Gonzales' use of prescription pain medications is one of the central facts in this case. Indeed, it is the very reason BEA gives for terminating his employment. *See Answer* ¶ 29, Dkt. 4. Merely informing the jury that Gonzales used prescription pain medications without allowing his treating physician to explain the reasons, conditions, and circumstances attending that use would paint an incomplete and potentially misleading picture for the jury.

### 3. Lack of Expertise

BEA asks the Court to prohibit Dr. Rindfleisch from opining on whether Gonzales "meets the qualification standards set forth in 10 CFR 712 (Human Reliability Program) or 10 CFR 1046 (Medical, Physical Readiness, Training, and Access Authorization Standards for Protective Force Personnel)." *Def.'s Memo. in Supp.* at 7, Dkt. 70-1. It argues that Dr. Rindfleisch is not an expert on the

requirements of those federal regulations and therefore should not be allowed to opine on how they apply to Gonzales.

The Court agrees with BEA's conclusion, but for a different reason. As explained above, Dr. Rindfleisch is a treating physician who may only testify to his diagnosis, treatment, and care of Gonzales, and to any medical opinions he formed during the course of treating Gonzales. Dr. Rindfleisch's opinion regarding how federal law applies to Gonzales is not a component of his treatment or diagnosis, nor is it a *medical* opinion. Thus, regardless of Dr. Rindfleisch's familiarity with the federal regulations, he cannot offer his opinion on whether Gonzales met the legal requirements set forth in the federal regulations.

**4. Limiting Instruction**

Finally, BEA asks that any testimony offered by Dr. Rindfleish be accompanied by a limiting instruction "making clear to the jury that the physical ability to perform the essential functions of one's job while opioid dependent is insufficient to render that person a 'qualified individual' under the ADA." *Reply* at 6, Dkt. 73. At this point, the Court does not believe such a limiting instruction is necessary.

Before deliberations, the Court will instruct the jury on the law that applies to each of Gonzales' claims. Dr. Rindfleisch's testimony may factor into the jury's application of that law to the facts of this case—namely, to their determination of

whether Gonzales was a "qualified individual" under the ADA. At this stage, the Court does not see why testimony related to Dr. Rindfleisch's treatment of Gonzales would confuse the jury or muddle the legal standards set forth by the Court. All the same, trial may unfold in unexpected ways, and the Court therefore will not entirely foreclose the possibility that a limiting instruction may become necessary in the context of trial.

## ORDER

**IT IS ORDERED that** Defendant Battelle Energy Alliance, LLC's Motion in Limine to Limit Testimony of Dallas Rindfleisch (Dkt. 70) is **GRANTED, in part, and DENIED, in part,** as follows:

1. The Motion is **GRANTED** to the extent that Dr. Rindfleisch may testify only to his diagnosis, treatment, and care of Gonzales, and any opinions he formed during the course of treatment. He may not, however, offer his opinion on the best practices for safely using or prescribing opioid pain medications, except as that opinion was reflected in his treatment of Gonzales.

2. The Motion is **GRANTED** to the extent that Dr. Rindfleisch is not permitted to opine on whether Gonzales met the legal requirements for maintaining medical certification under 10 C.F.R. § 712 and 10 C.F.R. § 1046.

3. The Motion is **DENIED** in all other respects.

DATED: July 19, 2024

B. Lynn Winmill
U.S. District Court Judge