UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROMAN T. GONZALES,<br><br>               Plaintiff,<br><br>v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br>               Defendant. | Case No. 4:20-cv-00102-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiff Roman Gonzales' Omnibus Motion in Limine (Dkt. 97) and Defendant Battelle Energy Alliance, LLC's (BEA's) Motion in Limine to Preclude Testimony of Attorney Austin Allen (Dkt. 96). For the reasons explained below, the Court will partially grant and partially deny Gonzales' motion. The Court will also deny BEA's motion.

## BACKGROUND[1]

Roman Gonzales was employed as a security officer with Battelle Energy Alliance, LLC ("BEA") from July 2005 until January 2019. During that time, Gonzales suffered chronic back pain from a pre-existing injury. To manage his

---

[1] For purposes of placing the present motions in context, the Court recites the allegations set forth in the plaintiff's Complaint (Dkt. 1).

**MEMORANDUM DECISION AND ORDER**-1

pain, Gonzales used prescription pain medications. BEA was aware that Gonzales used pain medications but allowed him to continue working as a security officer so long as he complied with certain parameters imposed under BEA's Occupational Medical Program (OMP).

In 2015, Gonzales was placed in the Human Reliability Program (HRP), a program created by the Department of Energy to ensure that employees who have access to certain nuclear materials "meet the highest standards of reliability and physical and mental suitability." 10 C.F.R. § 712.1. Employees like Gonzales who are subject to the HRP requirements must maintain "HRP certification" in order to keep their jobs. 10 C.F.R. § 712.10. Gonzales obtained HRP certification and remained in the HRP through 2016 and 2017. During that period, Dr. Stewart Curtis, the OMP Director, oversaw and approved Gonzales' HRP certification, although he was aware of Gonzales' use of prescription medications.  In early 2018, however, a new doctor with the OMP, Dr. Martin Mangan, raised concerns with Gonzales' use of pain medications. Dr. Mangan claimed that Gonzales was abusing his pain medications, and Gonzales' HRP approval was subsequently revoked. To regain HRP approval, BEA explained, Gonzales would have to attend weekly counseling sessions and commit to not using pain medications for two years. Gonzales refused, explaining that he would not be able to perform his job duties without managing his pain.

**MEMORANDUM DECISION AND ORDER-2**

Unable to keep working as a security officer without his medical certifications, Gonzales applied for several other positions with BEA. Each of his applications was rejected, and ultimately, in January 2019, BEA terminated his employment.  In February of 2020, after exhausting his administrative remedies, Gonzales filed this lawsuit against BEA in federal court. Gonzales asserts six claims under both federal and state law:

1. Disability Discrimination/Failure to Accommodate under the Americans with Disabilities Act (ADA) and the Idaho Human Rights Act (IHRA);
2. Race/National Origin Discrimination in Violation of Title VII and the IHRA;
3. Race Discrimination in Violation of 42 U.S.C. § 1981;
4. Unlawful Disclosure of Confidential Medical Information in Violation of ADA and the IHRA;
5. Retaliation in Violation of ADA and the IHRA; and
6. Retaliation in Violation of Title VII and the IHRA.

Discovery is closed and trial is set to begin on August 12, 2024. Gonzales has filed an Omnibus Motion in Limine (Dkt. 97), and BEA has filed a Motion in Limine to Preclude Testimony of Attorney Austin Allen (Dkt. 96). The motions are fully briefed and ripe for decision.

## LEGAL STANDARD

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, they are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am.*

MEMORANDUM DECISION AND ORDER-3

*Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Rulings on motions in limine are preliminary opinions that are "entirely within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Further, such rulings are provisional and therefore "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the Court will entertain objections on individual proffers as they arise, even though the proffer falls within the scope of a denied motion in limine. *See Luce*, 469 U.S. 38 at 41–42 ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

## ANALYSIS

1. **Medical Records Created by Non-Witnesses**

BEA intends to submit several of Gonzales' medical records as evidence at trial. Those records were created over the course of ten years by four different healthcare providers: Dr. Stromberg; Dr. Klippert; Idaho Falls Community Hospital; and Bingham Memorial Hospital. Gonzales objects that the medical records lack foundation, are largely irrelevant, and constitute inadmissible hearsay.

Before offering evidence at trial, a party "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901. Parties often satisfy this "foundation" requirement through the testimony of a

witness who has personal knowledge about the item. FED. R. EV. 901(b)(1). Gonzales correctly points out that BEA has not identified as witnesses any of the medical providers who purportedly created the medical records that BEA seeks to offer. However, it is not clear to the Court that BEA could not lay foundation for these documents during its examination of Gonzales, himself, who presumably has personal knowledge of his own medical records. At this stage, the Court will not exclude the medical records for lack of foundation.

Gonzales next argues that the medical records are not relevant. At the outset, the Court agrees that the portions of those records that pertain to Gonzales' unrelated medical conditions are plainly irrelevant and will not be admitted at tiral. The closer question is the relevance of the medical records from 2013, 2015, and 2016 that *do* relate to Gonzales' chronic back pain. Ultimately, the Court concludes that those records are or may become relevant in three respects. First, depending on Gonzales' testimony at trial, the records may be relevant to impeach his credibility. Second, any medical records that BEA was aware of at the time may be relevant to its purported concerns over Gonzales' trustworthiness. And third, depending on Dr. Rindfleisch's testimony at trial, the records may be relevant to challenge the bases for his expert opinions. Given these potential avenues to admissibility, the Court will not summarily exclude the records on this basis.

**MEMORANDUM DECISION AND ORDER-5**

Finally, BEA objects that the medical records constitute inadmissible hearsay. A statement is hearsay if it was made out of court and is offered to prove the truth of the matter asserted in the statement. FED. R. EVID. 801(c). Hearsay is generally inadmissible, subject to a few exceptions. FED. R. EVID. 802 & 803. BEA intends to offer medical records that contain out-of-court statements. But it has not pointed to any exception or exclusion that would shield those records from the general rule against hearsay. Consequently, unless BEA shows that some exception applies, it cannot offer those records at trial to prove the truth of what is contained in the records. For example, BEA could use the medical records to prove that Gonzales in fact used pain medications more frequently than he disclosed to BEA.

Of course, BEA could offer the medical records for another "non-truth" purpose, such as to impeach a witness. *United States v. Arteaga*, 117 F.3d 388, 397 n.18 (9th Cir. 1997) ("If a witness says 'X' on the stand, his out-of-court statement 'not-X' impeaches him, whether X is true or not."), *cert. denied*, 522 U.S. 988 (1997). Here, however, BEA would have to overcome additional obstacles before using the medical records to impeach Gonzales, because those records contain *two layers* of hearsay. The medical records themselves are out-of-court statements by the medical providers, and any statements within those records that are attributed to Gonzales are likewise hearsay—that is, "hearsay within hearsay." FED. R. EVID. 805. To admit such evidence, BEA must show that "*each part* of the combined statements

conforms with an exception" to the hearsay rule. FED. R. EVID. 805 (emphasis added). The problem is that even if Gonzales' statements were offered for the non-truth purpose of impeachment, the records themselves would have to be offered for their truth—i.e., to show that Gonzales actually made the statements.

Ultimately, although Gonzales' medical records are relevant to several issues in this case, they contain inadmissible hearsay. Accordingly, BEA may not offer the medical records at trial unless it first shows that they are not barred under the rule against hearsay.

## 2. After-Acquired Medical Records

Gonzales next seeks to bar BEA from eliciting testimony, arguing, or suggesting that its decisions to decertify and terminate Gonzales were justified by medical records that BEA only later obtained.[2] The Court agrees. After all, BEA "could not have been motivated by knowledge it did not have" at the time. *Pl.'s Memo. in Supp.* at 5, Dkt. 98 (quoting *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360 (1995)). Accordingly, after-acquired medical records are simply not relevant to BEA's motivation for decertifying and terminating Gonzales.

However, an item of evidence may be inadmissible for one purpose but admissible for another purpose. On one hand, binding precedent makes clear that

---

[2] The Court will use the term "after-acquired medical records" to refer to medical records that BEA did not have at the time it decertified and terminated Gonzales.

**MEMORANDUM DECISION AND ORDER-7**

BEA cannot use after-acquired medical records as a retroactive justification for taking adverse employment action against Gonzales. *McKennon*, 513 U.S. at 359–60. At the same time, BEA may use those records for a different purpose—namely, to show that Gonzales was not a "qualified individual" under the Americans with Disabilities Act (ADA).

The Ninth Circuit made this very distinction in *Anthony v. Trax International Corporation*, 955 F.3d 1123, 1130–31 (9th Cir. 2020). There, a plaintiff sued her former employer for disability discrimination under the ADA after she was terminated. *Id.* at 1126. During discovery, the employer learned for the first time that the plaintiff did not have the bachelor's degree that was required for the position she previously held. *Id.* The district court entered summary judgment for the employer, relying on the after-acquired evidence and concluding that, because the plaintiff lacked the requisite degree, she was not a "qualified individual" under the ADA. *Id.* at 1127.

On the appeal, the Ninth Circuit considered whether an employer may use after-acquired evidence to defend against an employment discrimination claim. The court first clarified that an employer cannot use after-acquired evidence as a "retroactive, legitimate justification" for an "admittedly discriminatory discharge." *Id.* at 1130. However, the court went on, an employer *may* use after-acquired

**MEMORANDUM DECISION AND ORDER-8**

evidence "to rebut an employee's claim that she is a qualified individual under the ADA." *Id.* at 1130–31.

The distinction set forth in *Anthony* squarely applies in this case. BEA cannot use the after-acquired medical records to show *why* it decertified and terminated Gonzales. *Id.* at 1131 (explaining that an employer may not "enlarge the basis upon which [it] relied" in taking an adverse action) (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)). BEA may, however, use those records to show that Gonzales was not a "qualified individual" under the ADA. *Id.* at 1130–31.

### 3.   Meeting Notes

BEA identified a document on its Exhibit List (Dkt. 91) entitled, "2018.11.13 Notes from ADA Meeting Maiers – Curtis-Gonzales." That document purports to contain typewritten notes from a meeting held on November 13, 2018, between Dr. Curtis, Roman Gonzales, and Brenda Maiers. *Ulrich Decl.*, Ex. A, Dkt. 98-2. At the bottom of the document is this hand-written notation: "B. Maiers 11/13/18." *Id.*

In his initial motion, Gonzales objected to the admission of the notes at trial on two grounds: first, BEA has not identified Brenda Maiers as a witness and therefore cannot lay adequate foundation; and second, the notes constitute inadmissible hearsay. In its response brief, BEA ignored both objections, stating simply that the notes could be used "to refresh the recollection of others in attendance" at the meetings. *Def.'s Resp.* at 3, Dkt. 110. On Monday, August 5, 2024,

however, BEA filed a Notice of Errata (Dkt. 118), stating: "BEA has confirmed that the author of these notes is not Brenda Maiers but rather Kristen Morrison, who is identified as one of Defendant's witnesses. These notes are appropriately admitted into evidence if Ms. Morrison lays the proper foundation as otherwise permitted pursuant to the Federal Rules of Evidence."

Gonzales' first objection is moot in light of BEA's discovery that Ms. Morrison, not Ms. Maiers, was the author of the notes. Presumably, BEA will be able to lay adequate foundation for the notes during its examination of Ms. Morrison. Still, though, BEA must overcome the rule against hearsay before admitting the notes at trial.[3] So far, BEA has not even attempted to identify an applicable exception to the hearsay rule. Still, at this point, there is simply not enough information to make a definitive ruling on the admissibility of the notes. BEA may seek to offer the notes for some non-truth purpose, or it may point to an applicable hearsay exception. The Court cannot divine BEA's intentions and, for now, must simply leave this issue where it is.

---

[3] Even if BEA does not overcome the rule against hearsay, the Court would likely allow the notes to be used to refresh a witness' recollection. FED. R. EVID. 612; *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) ("[E]ven inadmissible evidence may be used to refresh a witness's recollection."); *United States v. Mkhsian*, 5 F.3d 1306, 1312–13 (9th Cir. 1993), *overruled on other grounds by* 133 F.3d 1282 (9th Cir. 1998) ("The trial court has wide limits of discretion in its decisions to permit [a party] to refresh the memory of a witness. Absent clear injustice, that discretion will not be abridged.") (cleaned up); *see also United States v. Harris*, No. 94–30326, 1995 WL 497915, at *5 (9th Cir. Aug. 16, 1995).  However, importantly, a document used to refresh a witness' recollection must be used for that exact purpose, and may not be shown to the jury or admitted into evidence.

**MEMORANDUM DECISION AND ORDER-10**

## 4. Evidence of Gonzales' Arrest and Disciplinary Action

BEA intends to offer evidence showing that Gonzales (1) was arrested for a misdemeanor in 2010 and (2) was subject to a disciplinary action by BEA in 2012. Gonzales objects that neither record is relevant, and both would cause unfair prejudice if admitted at trial.

The Court cannot see how Gonzales' 2010 arrest is relevant to any issue in this case. The arrest occurred over a decade ago, did not result in a conviction, and involved conduct that appears entirely unrelated to this case. BEA is prohibited from suggesting or offering evidence that would indicate Gonzales was arrested in 2010. If, during trial, BEA believes Gonzales has opened the door to such evidence, BEA must first raise that argument with the Court outside the jury's presence. BEA shall make no reference or allusion to the arrest without prior approval of the Court.

The same goes for evidence related to the disciplinary action from 2012. The Written Notice of misconduct states that Gonzales was disciplined because he arrived late for work on December 16, 2012, with alcohol in his system. *Ulrich Decl.*, Ex. C, Dkt. 98-4. BEA has not explained—nor can the Court surmise—how that disciplinary action relates to any claims or defenses in this case. On the contrary, informing the jury of the disciplinary action would only create confusion and prejudice against Gonzales. Accordingly, BEA is also prohibited from suggesting or offering evidence related to the 2012 disciplinary action. If, during trial, BEA

believes Gonzales has opened the door to such evidence, BEA must first raise that argument with the Court outside of the jury's presence. BEA shall make no reference to the disciplinary action without prior approval of the Court.

## 5. Failure to Appeal Decertification

Gonzales did not file an internal appeal following the revocation of his certifications under 10 C.F.R. § 712 and § 1046. He now asks the Court to prohibit BEA from suggesting to the jury that he should have done so. After all, Gonzales argues, he had the right to choose his remedy, and permitting BEA to present irrelevant evidence and argument about the internal appeal process would only confuse the jury.

Gonzales' decision to forego an internal appeal is relevant to at least two issues in this case. First, Gonzales had a duty to mitigate any damages he suffered as a result of BEA's conduct. *Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 867 (9th Cir. 1980); *see also* Ninth Cir. Model Civ. Jury Instr. 5.3. He chose not to seek review through the internal appeals process—and that was his prerogative. But it is BEA's prerogative to argue that Gonzales should have done more to mitigate his damages, including by appealing his decertification.

Gonzales' decision not to pursue an internal appeal is also relevant to the testimony Employee 165 is expected to offer. Gonzales points to Employee 165 as a comparator to demonstrate that BEA treated similarly situated Caucasian

employees more favorably than it treated him. BEA counters by arguing that Employee 165's situation was materially different because Employee 165 only obtained a more favorable outcome by pursuing an appeal. To distinguish Gonzales from Employee 165, BEA must be permitted to explain why, in its view, the two employees ultimately obtained different outcomes.

### 6.     Lack of Union Arbitration

Finally, Gonzales seeks to bar BEA from challenging the merit of his claims by pointing to his Union's decision not to pursue arbitration over his termination. BEA concedes that the Union's decision is, itself, irrelevant. However, BEA argues, evidence that Gonzales was "very open" with Union leadership about his HRP status is relevant to another issue—namely, Gonzales' claim that BEA unlawfully disclosed his confidential medical information. The Court agrees.

BEA may not point to the Union's inaction to show that Gonzales' discrimination claims lack merit. It may, however, present evidence of Gonzales' communications with BEA to rebut his assertion that BEA disclosed his medical information.

### 7.     Testimony of Austin Allen

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (quoting *United States v. Sanmina*

**MEMORANDUM DECISION AND ORDER-13**

*Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)). However, "'[t]he privilege only protects disclosure of [the] communications [themselves]; it does not protect disclosure of the underlying facts,' so long as the underlying facts can be proven without resort to the privileged materials." *Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir. 2010) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).

BEA seeks to bar Gonzales from calling Austin Allen as a witness at trial. Mr. Allen is an attorney who helped represent Employee 165 during a dispute with BEA. BEA argues that any testimony Gonzales might seek from Mr. Allen would be protected under the attorney-client privilege. But Gonzales makes clear that he will elicit "only factual testimony regarding the facts and course of events that occurred with regard to BEA's treatment of Employee 165[.]" *Pl.'s Resp.* at 2, Dkt. 108. He does not "intend to in any way seek the contents of communications between Mr. Allen and his client which have not been disclosed." *Id.* The attorney-client privilege does not bar Gonzales from asking Mr. Allen about the underlying facts related to BEA's treatment of Employee 165.

BEA also argues that any testimony related to its negotiations with Employee 165 is protected under Federal Rule of Evidence 408. That rule prohibits a party from offering evidence of a compromise or negotiation in order to prove or disprove the validity or amount of a disputed claim. Gonzales assures the Court that he will not elicit testimony related to settlement discussions between Employee 165 and

BEA—"just facts about what occurred." *Pl.'s Resp.* at 2, Dkt. 108. So long as Gonzales stays on that straight and narrow path, the Court will not exclude Mr. Allen's testimony under Rule 408.

## ORDER

**IT IS ORDERED that:**

1. Gonzales' Omnibus Motion in Limine (Dkt. 97) is **GRANTED, in part, and DENIED, in part,** as set forth above; and

2. BEA's Motion in Limine to Preclude Testimony of Attorney Austin Allen (Dkt. 96) is **DENIED**.

DATED: August 6, 2024

B. Lynn Winmill
U.S. District Court Judge