UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROMAN T. GONZALES,<br><br>    Plaintiff,<br><br>    v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br>    Defendant. | Case No. 4:20-cv-00102-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Defendant's renewed Motion for Judgment as a Matter of Law or, Alternatively, for New Trial (Dkt. 165). For the reasons described below, the Court will deny the motion.

# BACKGROUND

This is an employment discrimination case stemming from Battelle Energy Alliance's termination of Roman Gonzales in January 2019 due to his use of prescribed opiates. In August 2024, a seven-member jury found that Battelle discriminated against Gonzales because it regarded him as having a disability and

MEMORANDUM DECISION AND ORDER - 1

retaliated against him for engaging in protected activity. Battelle now moves for renewed judgment as a matter of law or, alternatively, a new trial.

Gonzales began working for Battelle, a contractor for the U.S. Department of Energy (DOE), as a Security Police Officer (SPO) in 2005. The general fitness for duty requirements for that role are set out in 10 C.F.R. § 1046, which "establishes the medical, physical readiness, training and performance standards" for contractor security personnel at DOE facilities. In 2014, after an injury exacerbated long-standing lower-back problems, Gonzales began taking prescription opiates. Battelle allowed him to remain in his position if he refrained from taking opiates within eight hours of work.

In 2015, Gonzales was placed in the Human Reliability Program (HRP), a DOE security and safety reliability program that imposes particularly high suitability requirements for certain sensitive positions. The HRP requirements are set out in 10 C.F.R. § 712. Dr. Stewart Curtis, the Director of Battelle's Occupational Medical Program (OMP), was aware of Gonzales' medication regime but still approved his HRP certification. Gonzales remained in the program through 2017 and consistently received good performance evaluations.

In late 2017, a new OMP doctor, Martin Mangan, began raising concerns that Gonzales was abusing his pain medication. His medication plan had not

**MEMORANDUM DECISION AND ORDER - 2**

changed, and no evidence suggested that he had stopped abiding by the eight-hour rule. He also received a renewed medical certification under § 1046 in May 2018. Nonetheless, Dr. Mangan contacted Gonzales' Employee Assistance Program (EAP) counselor, Kenneth Minnix, to report that he was abusing his medication. As a result of Minnix's recommendation, Gonzales was temporarily removed from HRP access authorization in June 2018. Battelle did not, however, submit the case to DOE for a final HRP determination pursuant to § 712. And although Battelle told DOE that Gonzales would be evaluated for substance abuse by an EAP psychologist, Gonzales never received the evaluation.

Instead, Battelle informed Gonzales that to regain HRP approval, he would be required to attend weekly counseling and stop taking pain medication for two years. Gonzales refused and requested a reasonable accommodation to allow him to continue in the SPO role while taking his medication within parameters that would not interfere with job performance. Battelle responded that the only available accommodation was reassignment to an open position and that he would have to apply like any other employee seeking a new role.

In November 2018, Gonzales' medical certification under § 1046 was revoked, and he began applying for other Battelle positions. He did not, however, challenge the § 1046 disqualification through the independent review process set

**MEMORANDUM DECISION AND ORDER - 3**

out in the regulation. Around this time, Gonzales also learned that his managers had been informed that he failed drug tests and was addicted to opiates. He filed an HR complaint about the unnecessary disclosure of his medical information and disparaging statements about his perceived drug use. Rather than investigating the complaint, Battelle issued a notice of termination requiring him to find another position at the company within thirty days. After unsuccessfully applying for multiple positions, Gonzales was discharged in January 2019.

Gonzales subsequently filed this lawsuit alleging race discrimination, disability discrimination, retaliation, and unlawful disclosure of confidential medical information. The case went to trial in August 2024. At the close of the evidence, Battelle moved pursuant to Rule 50(a) for judgment as a matter of law on all claims stemming from Battelle's actions under § 1046 and § 712. Specifically, Battelle argued that such actions were unreviewable security determinations outside the Court's jurisdiction. The Court denied the motion.

The jury returned a late-night verdict for Gonzales on his claims of perceived disability and retaliation. The jury concluded that Battelle discriminated against him because he was regarded as having a disability—drug addiction—and retaliated against him for engaging in protected activity. However, the jury rejected the claims of discrimination based on actual disability—his back problems—and

MEMORANDUM DECISION AND ORDER - 4

denial of reasonable accommodation. Gonzales' claims of race discrimination and unlawful disclosure of medical information also failed.

Battelle now seeks renewed judgment as a matter of law under Rule 50(b) or, alternatively, a new trial under Rule 59.

## LEGAL STANDARD

Federal Rule of Civil Procedure 50 governs a request for a judgment as a matter of law. Under Rule 50(a), a party must first move for judgment as a matter of law before the case is submitted to the jury and "specify . . . the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). Under Rule 50(b), if the court denies the pre-verdict motion, "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). The failure to make a Rule 50(a) motion before the case is submitted to the jury forecloses the possibility of the Court later considering a Rule 50(b) motion. *Tortu v. Las Vegas Metropolitan Police Dep't.*, 556 F.3d 1075, 1083 (9th Cir. 2009). Furthermore, in general, "[a] post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion," or the "logical extensions" of those grounds. Fed. R. Civ. P. 50(b), 1991 advisory committee notes; *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).

**MEMORANDUM DECISION AND ORDER - 5**

A court may grant a Rule 50 motion for judgment as a matter of law only if "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Krechman v. County of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013). When the grounds for a Rule 50(b) motion were properly asserted in a Rule 50(a) motion, the substantial evidence standard applies: "A jury's verdict must be upheld if it is supported by substantial evidence . . . , even if it is also possible to draw a contrary conclusion from the same evidence." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). When the grounds were not previously asserted, the jury's verdict is reviewed instead for "plain error" and may be reversed "only if such plain error would result in a manifest miscarriage of justice." *Go Daddy Software, Inc.*, 581 F.3d at 961. In either case, the court may not weigh evidence or make credibility determinations, and all evidence must be viewed in the light most favorable to the non-moving party. *Id.*

The standard for granting a new trial under Rule 59 is somewhat lower. A motion for new trial should be granted if "the verdict is against the clear weight of the evidence." *Martin v. Cal. Dept. of Veterans Affs.*, 560 F.3d 1042, 1046 (9th Cir. 2009). A new trial is also appropriate if it appears that the jury rendered a "compromise verdict" to resolve disagreements between jurors. *Romberg v. Nichols*, 970 F.2d 512, 521 (9th Cir. 1992). This requires the court to "consider

**MEMORANDUM DECISION AND ORDER - 6**

'any indicia of compromise apparent from the record and any factors that may have caused a verdict for damages that would be inadequate if the jury actually found liability.'" *Holloway v. Orange County*, No. 8:19-CV-01514, 2024 WL 1816943, at *9 (quoting *Yarbrough v. Sturm, Ruger & Co.*, 964 F.2d 376, 379 (5th Cir. 1992)). Logical inconsistency is a particularly strong indication of a compromise verdict. *Ford v. Peery*, 999 F.3d 1214, 1226 (9th Cir. 2021).

## ANALYSIS

1. Judgment as a Matter of Law

   A. Justiciability of HRP Access Authorization

Battelle first reasserts its argument that the revocation of Gonzales' HRP access authorization is non-justiciable under *U.S. Department of the Navy v. Egan*, 484 U.S. 518 (1988), and related cases. This would mean that Gonzales' "regarded as" claim falls outside the jurisdiction of the Court.

*Egan* and its progeny stand for the principle that certain suitability assessments that implicate national security, such as security clearance determinations, are nonjusticiable. *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 196 (9th Cir. 1995). As the Supreme Court explained in *Egan*, "the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive

Branch." 448 U.S. at 527. Accordingly, courts lack jurisdiction to hear challenges to such determinations, even when brought by plaintiffs alleging unlawful discrimination. *Brazil*, 66 F.3d at 195 & n.1. This rule has been extended beyond security clearances to other sensitive personnel assessments, including HRP access authorization. *Foote v. Montiz*, 751 F.3d 656, 657-58 (D.C. Cir. 2014).

There are, however, limits to this limit on the Court's jurisdiction. In *Zeinali v. Raytheon Co.*, the Ninth Circuit held that a discrimination claim implicating a security clearance decision is justiciable if the court can avoid examining the merits of the executive's decision. 636 F.3d 544, 549-50 (9th Cir. 2011). *Zeinali* involved a Raytheon employee of Iranian descent who was required to obtain a security clearance and fired after the clearance was denied. *Id.* at 546-47. He filed suit for racial discrimination, arguing that a security clearance was not a *bona fide* job requirement but rather a pretext for discriminatory termination. *Id.* at 551.

The Ninth Circuit held that the court had jurisdiction to hear the case because the plaintiff challenged only Raytheon's actions. *Id.* at 549-50. *Egan* and subsequent decisions, the court pointed out, involved plaintiffs who "(1) brought suit against the government agency responsible for the security clearance determination, and (2) directly challenged the agency's decision to deny or revoke a security clearance." *Id.* at 550. It would be a significant leap to conclude from

**MEMORANDUM DECISION AND ORDER - 8**

this "that federal courts lack jurisdiction over employment discrimination claims . . . which are brought against a private employer who was not responsible for the executive's security clearance decision." *Id.* The Ninth Circuit roundly rejected an interpretation of *Egan* that would "essentially immunize government contractors from any liability in cases involving employees whose security clearances are revoked or denied." *Id.*

Returning to the present matter, Gonzales' claim falls into something of a grey area. His case does implicate the substance of a security determination—his HRP authorization. But the determination at issue was an initial assessment made by a private contractor, not an official decision by an executive agency. The question is thus whether the *Egan* rule bars judicial review of non-final security determinations made by government contractors in the absence of any executive-branch involvement. The Court declines to extend *Egan* that far.

The HRP regulation, 10 C.F.R. § 712, sheds light on the situation by explaining the relationship between the temporary revocation initiated by Battelle and the final decision made by the DOE. First, the HRP management official directs the temporary removal of an HRP-certified employee. *Id.* § 712.19(a). At this level, the decision can be made by a contractor, *see id.* § 712.3, but it is limited in scope. Temporary removal is "an interim, precautionary action and does not

**MEMORANDUM DECISION AND ORDER - 9**

constitute a determination that the individual is not fit to perform his or her required duties. Removal is not, in itself, cause for loss of pay, benefits, or other changes in employment status." *Id.* § 712.19(b).

Next, if the HRP management official determines that the employee does not meet HRP certification requirements, the official must prepare a report to the Manager at DOE. *Id.* § 712.19(f). The Manager then makes an "initial decision" on HRP authorization. *Id.* § 712.19(h). If the decision is revocation, the HRP management official must additionally prepare an evaluative report that is reviewed by DOE counsel for legal sufficiency and shared with the employee. *Id.* The employee then has the right to submit a request for reconsideration or a hearing to the Manager. *Id.* § 712.20.

The regulation makes clear that the DOE Manager, not the contractor, wields authority over HRP access. All decisions except temporary removal are vested in the Manager. If Gonzales' case had been submitted to DOE, and DOE had gone forward with revocation, that decision indeed would be outside the jurisdiction of this Court. But Battelle chose not to do that. Rather than submitting the case for a proper determination, Battelle kept Gonzales in a holding pattern for months before revoking his medical certification under a different regulation, 10 C.F.R. § 1046. Battelle cannot avail itself of the Court's deference to executive decision-

**MEMORANDUM DECISION AND ORDER - 10**

making when Battelle did not allow the executive to make a decision.

Battelle points to *Bennett v. Chertoff*, 425 F.3d 999 (D.C. Cir. 2005), to argue that even non-final suitability determinations are nonjusticiable. But *Bennett*, like nearly all the other *Egan* cases, involved discretion exercised by an executive agency—there, the TSA. For Gonzales, the decisive issue is not that the HRP revocation was non-final, but rather that it was done by Battelle without any input at all from the executive branch. Battelle's interpretation of *Egan* would transform a principle designed to protect sensitive executive decision-making into a much broader rule exempting government contractors from civil rights laws. This conflicts with both the Ninth Circuit's holding in *Zeinali*—binding precedent for this Court—and the underlying logic of the *Egan* doctrine.

*Egan* and its progeny hinge on the idea that courts should not intrude on certain sensitive areas of executive-branch decision-making. This, in turn, reflects the principle of the separation of powers at the heart of our governmental system. But the Constitution affords no such deference to private companies, even those that do business with executive agencies. As a result, the Court has jurisdiction to review Battelle's temporary removal of Gonzales' HRP access authorization.

### B. Fitness for Duty Determination

Battelle next contends that a negative fitness for duty determination made

MEMORANDUM DECISION AND ORDER - 11

under 10 C.F.R. § 1046 cannot give rise to an ADA claim. Here, Battelle makes two related assertions: (1) that fitness for duty determinations are not reviewable; and (2) that a negative fitness determination renders an employee not "otherwise qualified" for the position and therefore outside the protections of the ADA.

As an SPO, Gonzales was required to meet the requirements for both HRP access authorization under § 712 and the fitness-for-duty requirements set out in § 1046. Unlike HRP access, the fitness-for-duty standards are not tied to predictive security determinations and therefore do not raise *Egan* concerns. Instead, Battelle argues, to similar effect, that ADA protections do not extend to fitness determinations that implicate public safety and therefore "should not be second-guessed by the judiciary." *Def.'s Mem.* at 11, Dkt. 165.

The problem with this argument is that § 1046 is explicitly subject to the ADA: "Exemptions may not be granted from the requirement to meet any essential function of a position *notwithstanding that reasonable accommodation must be granted as required by this part and the Americans with Disabilities Act of 1990* . . . ." 10 C.F.R. § 1046.2(c) (emphasis added). This alone would appear to defeat Battelle's position. If exemptions from fitness-for-duty standards must be granted consistent with the ADA, it follows that federal courts may review fitness-for-duty determinations for ADA compliance.

For support, Battelle cites *McNelis v. Penn. Power & Light Co.*, 867 F.3d 411 (2011), where the Third Circuit held that a negative fitness-for-duty determination under 10 C.F.R. § 26 meant that an employee could not perform the essential functions of his job. Crucially, that determination was made pursuant to a Nuclear Regulatory Commission fitness program, not the DOE program applicable to Gonzales. While § 1046 incorporates ADA exemptions, § 26.9 provides only that "the Commission may grant such exemptions from the requirements of the regulations in this part as it determines are authorized by law and will not endanger life or property or the common defense and security, and are otherwise in the public interest." Moreover, unlike Gonzales' case, *McNelis* did not involve a claim that being deemed unfit for duty was a pretext for unlawful discrimination.

The other cases cited by Battelle—none of which are in the Ninth Circuit—are similarly distinguishable. *Cately v. Energy Harbor Nuclear Corp.* involved a plaintiff who failed to disclose his use of prescription opiates, and a nuclear facility access regulation that, unlike § 1046, did not provide for ADA exemptions. No. 5:21-cv-2216, 2023 WL 4456818, at *1-2 (N.D. Ohio 2023). *McDonald v. Penn. State Police* is more factually relevant in some respects but turned on a decision made by a state commission "established for the very purpose of considering and evaluating whether an applicant can perform the essential functions of a job." No.

**MEMORANDUM DECISION AND ORDER - 13**

02:09-cv-00442, 2012 WL 5381403 (W.D. Penn. Oct. 31, 2012). Additionally, neither case involved a claim of pretext.

Again, if Battelle wanted to avoid judicial "second-guessing" of its decisions regarding Gonzales, it could have submitted his case to DOE pursuant to the procedures of § 712. In the absence of such actions, Battelle is, like any employer, subject to judicial review for compliance with the ADA.

Gonzales presented substantial evidence to support his perceived discrimination claim, including Battelle's abrupt turnabout on his medical certification, Battelle's failure to evaluate him for substance abuse, statements made by OMP doctors, and the events with Employee 165. The jury determined that Battelle discriminated against Gonzales because it regarded him as disabled. There is no reason why the jury's verdict cannot stand.

### C. Sufficiency of Retaliation Claim and Damages

Battelle next seeks judgment as a matter of law on Gonzales' retaliation claim because it is logically inconsistent with the rest of the verdict. Battelle did not raise the retaliation issue in its Rule 50(a) motion, so the Court must review the jury's verdict for plain error and reverse only if that error "would result in a manifest miscarriage of justice." *Go Daddy Software, Inc.*, 581 F.3d at 961.

Battelle proposes that it is inconsistent for the jury to have found that

Gonzales' termination was unlawful but also that Battelle did not discriminate against Gonzales for his actual disability or fail to provide him with a reasonable accommodation. The argument is unpersuasive. First, there is no inconsistency between returning a "regarded as" disability claim while rejecting an actual disability claim; that is why the two forms of disability discrimination are governed by distinct provisions of the ADA. *See* 42 U.S.C. § 12102. Second, employers are not obligation to accommodate a perceived disability—only an actual disability—so the jury's rejection of Gonzales' accommodation claim does not contradict its verdict on the "regarded as" claim. *See Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1233 (9th Cir. 2003)

    Accordingly, Battelle is incorrect to suggest that the only adverse action to support the jury's verdict was the company's failure to provide Gonzales with a different job. The company's decision to remove Gonzales from his SPO role was, obviously, an adverse action in itself. Further, while the jury concluded that Battelle did not fail to reasonably accommodate Gonzales, his request for an accommodation was still protected activity. Though Battelle did not have a duty to give him another job as an accommodation, denying him such a position because of his request would nonetheless be unlawful. The jury's retaliation verdict is thus entirely consistent with the verdict as a whole.

**MEMORANDUM DECISION AND ORDER - 15**

Battelle also argues that Gonzales failed to present evidence causally connecting his protected activity to the adverse action. This is not true. Gonzales provided a range of direct and circumstantial evidence of a causal relationship, including various inconsistent statements made by Battelle doctors and counselors, the failure to provide Gonzales with a substance abuse evaluation, misrepresentations to the DOE, the timing of Gonzales' disqualification under § 1046, and the timing of Gonzales' termination. In light of this evidence, the jury's verdict is certainly not plain error resulting in a manifest miscarriage of justice.

Relatedly, Battelle challenges the sufficiency of the evidence of actual damages. Here again, Battelle relies on the idea that the only basis for damages was the failure to give Gonzales a different job. As explained above, this is incorrect. The jury's verdict turned on Gonzales' termination, and the evidence of his wages as an SPO-II support the damages verdict.

### D. New Trial

Finally, Battelle seeks a new trial in the alternative to judgment as a matter of law. Battelle argues that the inconsistencies in the verdict suggest a compromise reached by exhausted jurors. The Court has already explained why the verdict is not inconsistent, and Battelle does not present any further evidence of compromise.

**MEMORANDUM DECISION AND ORDER - 16**

Therefore, there is no basis for a new trial.

The right to a jury trial is foundational to the American legal system. *See* U.S. Const. amend. VII. The jury empaneled here fulfilled their civic duty and returned a thoughtful verdict in a complicated case. That verdict was legally appropriate and supported by substantial evidence, and it is not the place of this Court to second-guess the jury's decision.

## ORDER

1. Defendant's renewed Motion for Judgment as a Matter of Law (Dkt. 165) is **DENIED**.



DATED: February 3, 2025

_____
B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 17