UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROMAN T. GONZALES,<br><br>  Plaintiff,<br><br>v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br>  Defendant. | Case No. 4:20-cv-00102-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion for Reinstatement or, in the Alternative, Front Pay, and Prejudgment Interest on Jury Award (Dkt. 160), and Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. 161). For the reasons described below, the Court will order reinstatement and award prejudgment interest totaling $99,894.65. The Court will also award $282,324.00 in attorneys' fees and 9,117.95 in costs.

## BACKGROUND

The facts of this case are described in this Court's simultaneously issued decision on Defendant's motion for judgment as a matter of law, and they need not

**Memorandum Decision and Order - 1**

be repeated here. In brief, Roman Gonzales worked for Battelle Energy Alliance as a Security Police Officer from 2005 to 2019. In 2014, he began taking prescription opiates for a back injury and informed Battelle of the medication. Battelle allowed him to continue in his role, provided that he did not take medication within eight hours of work.

Gonzales was placed in the rigorous Human Reliability Program (HRP) the following year. He performed well, and his medication regime did not change over the next several years. Nonetheless, Battelle physicians and counselors began expressing concern about his use of opiates in late 2017. His HRP access authorization was temporary revoked in June 2018. His request for a reasonable accommodation to continue taking the pain medicine was denied, and Battelle informed him that his only option was to apply to other jobs within the company. In November 2018, he was deemed medically unfit for duty. The following month, he received a notice of termination that placed him on unpaid status and gave him thirty days to apply for other positions at Battelle. In January 2019, after unsuccessfully applying for other positions, he was fired.

Gonzales subsequently filed this lawsuit. He brought claims for (1) race discrimination, (2) discrimination based on actual disability, (3) discrimination because he was regarded as disabled, (4) denial of reasonable accommodation, (5) retaliation, and (6) unlawful disclosure of confidential medical information.  The

**Memorandum Decision and Order - 2**

case went to trial in August 2024, and the jury found for Gonzales on two claims: "regarded as" discrimination and retaliation. The jury awarded damages of $435,447.18 for lost past wages and benefits, and $25,000.00 for pain and suffering, but nothing for lost future wages and benefits (Dkt. 150).

Gonzales now seeks additional relief in the form of reinstatement or, in the alternative, front pay, and prejudgment interest on the jury award (Dkt. 160). He also seeks attorneys' fees of $282,324.00 and costs of $9,117.95 (Dkt. 161).

## ANALYSIS

1.  **Reinstatement or Front Pay**

The Americans with Disabilities Act (ADA) provides courts with authority to order equitable relief, including reinstatement, when necessary to make whole a victim of disability discrimination. 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5). Reinstatement is the preferred remedy in discriminatory discharge cases but falls within the discretion of the trial court. *Cassino v. Reichhold Chem., Inc.*, 817 F.2d 1338, 1346 (9th Cir. 1987). When reinstatement is warranted but not viable—for instance, due to hostility between the plaintiff and employer—courts may instead order front pay to compensate for lost future earnings. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).

In the present case, the Court provided a jury instruction about front pay, and the jury declined to award Gonzales damages for future losses. This is not

**Memorandum Decision and Order - 3**

necessarily inconsistent with the rest of the verdict. For instance, it could reflect a failure to mitigate or the speculative nature of future damages. Nonetheless, whether to order reinstatement or front pay is ultimately the province of the Court, not the jury, and the Court has an obligation to consider whether this relief is appropriate to fully remedy the effects of Gonzales' discriminatory termination.

Battelle contends that it cannot reinstate Gonzales because of his use of prescription opiates. But Gonzales used the medication for years without objections from Battelle or any performance problems. The jury found that his termination was wrongful precisely because Battelle's stated reasons represented unlawful discrimination rather than legitimate concerns about his ability to do the job. Reinstatement, together with the back pay already awarded, is the natural solution to ensure that Gonzales is placed in the position he would have been but for Battelle's discriminatory conduct. *See Cassino*, 817 F.2d at 1346. This is particularly appropriate because Gonzales wishes to return to his job, and there is no evidence of the sort of animosity between the parties that can make reinstatement impractical. *See Thorne v. City of El Segundo*, 802 F.2d 1131, 1137 (9th Cir. 1986).

It is true that Battelle will still be obliged to evaluate Gonzales under federal regulations that govern fitness and suitability. Perhaps, as Battelle argues, this will lead again to Gonzales' termination. *Def.'s Opp'n to Mot. for Reinstatement* at 3,

**Memorandum Decision and Order - 4**

Dkt. 166. As long as no discrimination occurs when making this determination, that is not a problem. For instance, as the Court explained in denying Battelle's renewed motion for judgment as a matter of law, if the company follows the full HRP revocation procedure, a Department of Energy suitability determination would be unreviewable in court. An order of reinstatement does not equate to an edict that Gonzales can never be terminated.

The Court concludes that restoring Gonzales to his former position is necessary to make him whole. Accordingly, the Court will order reinstatement.

2. **Prejudgment Interest**

Gonzales is also entitled to prejudgment interest on his award. Battelle does not contest this except to argue that Gonzales should never have been awarded damages in the first place.

"The purpose of a prejudgment interest award in a wrongful termination case is to compensate a plaintiff for the loss of use of money that the plaintiff otherwise would have earned had he not been unjustly discharged." *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 83 (2d Cir. 1994). Like back pay itself, prejudgment interest reflects the district court's "duty to render a decree which will so far as possible eliminate the discriminatory effects of the past." *Clemens v. Centurylink, Inc.*, 874 F.3d 1113, 1116 (9th Cir. 2017). Whether to make that award lies within the "sound discretion" of the trial court and is determined by "balancing the

**Memorandum Decision and Order - 5**

equities." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013).

Gonzales is entitled to interest on both economic and noneconomic damages. Interest on the jury's back pay award is particularly appropriate due to the amount of time that elapsed between his termination on December 3, 2018, and the judgment issued on September 20, 2024. He should be compensated for the loss of use of the money he would have earned in that period of nearly six years. Interest on Gonzales' non-economic damages—$25,000 for pain and suffering—is also warranted. *See Barnard*, 721 F.3d at 1078; *White v. Oxarc, Inc.*, No. 1:19-cv-00485-CWD, 2022 WL 17668781, at *20 (D. Idaho Dec. 13, 2022). But, because his entitlement to non-economic damages did not become due until the date of the jury verdict, interest is appropriate only for the period from the verdict until the entry of judgment. *See White*, 2022 WL 17668781, at *20; *Arnold v. Pfizer Inc.*, No. 10-cv-01025, 2015 WL 1262775, at *3 (D. Or. Mar. 18, 2015).

The Court now turns to the calculations. The statutorily established post-judgment interest rate controls awards of prejudgment interest. *W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984); *see* 28 U.S.C. § 1961(a). For a judgment entered on September 20, 2024, the applicable interest

**Memorandum Decision and Order - 6**

rate is 3.95%.[1] The interest period for economic damages runs from the date of Gonzales' termination to the date of the judgment: 2,118 days. Interest on non-economic damages began accruing when the jury returned its verdict on August 19, 2024, so the period is 32 days.

For Gonzales' economic damages—$435,447.18—this yields an annual interest amount of $17,200.16; a daily amount of $47.12; and an award of $99,808.07.[2] For his noneconomic damages of $25,000.00, the annual interest amount is $987.50; the daily amount is $2.71; and the award is $86.58. Thus, Gonzales is entitled to a prejudgment interest award totaling $99,894.65.

3. **Attorney's Fees**

Turning to the Motion for Attorneys' Fees, Gonzales seeks an award of $282,324, representing 852.1 hours billed.

### A. Legal Standard

The ADA permits the "prevailing party" to seek reasonable attorneys' fees.

---

[1] *Post-Judgment Interest Rates – 2024*, U.S. Bankr. Ct., S. Dist. of Cal., https://www.casb.uscourts.gov/post-judgment-interest-rates-2024.

[2] Battelle did not object to Gonzales' methodology, so the interest award is calculated by (1) multiplying the judgment amount by the annual interest rate to determine the annual interest amount; (2) dividing the annual interest amount by 365 to determine the daily interest amount; and (3) multiplying that by the number of days in which interest accrued. *See Pl.'s Mot. for Reinstatement* at 9-10, Dkt. 160.

**Memorandum Decision and Order - 7**

42 U.S.C. § 12205. A plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). A plaintiff who prevails on some but not all claims is considered the prevailing party if he "succeed[s] on any significant issue in litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

When a plaintiff brings multiple unrelated claims, he can recover only for time expended on the successful claims. *Id.* at 435. But when a plaintiff brings multiple related claims and achieves mixed success, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* The key question is whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434.

Courts in the Ninth Circuit utilize the two-step "lodestar method" for this determination. The first step is to determine whether the hourly rate and the hours expended by the attorneys were reasonable. *Id.* at 433. The burden is on the party seeking the fees to document and "submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). But the court generally defers to the prevailing lawyer's professional judgment as to how much time the case required—"after all, he won, and might not have, had he been

**Memorandum Decision and Order - 8**

more of a slacker." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008). The hourly rate and the hours expended are then multiplied for an initial estimate of the attorneys' fees. *Hensley*, 461 U.S. at 433. The resulting "lodestar figure" is a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

Second, the court considers whether to adjust the lodestar figure based on the *Kerr* factors. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (1975), set out twelve factors to consider in an award of attorneys' fees. Many of these factors, however, are subsumed in the initial lodestar calculation—for instance "the time and labor required" and "the novelty and difficulty of the questions involved"— and need not be reconsidered. *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 & nn.8-9 (9th Cir. 1996). Remaining factors include (1) the customary fee; (2) time limitations imposed by the client or the circumstance; (3) the "undesirability" of the case; (4) the nature and length of the professional relationship with the client, and (5) awards in similar cases. *Id.* at 363-64, nn.8-9.

### B. Application

Gonzales is the prevailing party and therefore entitled to reasonable fees. His claims were all related—they arose from a common core of facts regarding his termination—so it is unnecessary to isolate time spent on successful claims.

**Memorandum Decision and Order - 9**

The Court now turns to the calculation of the lodestar figure. The reasonableness of counsel's hourly rate is based on "the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Ingram v. Oroudjian,* 647 F.3d 925, 928 (9th Cir. 2011). Gonzales worked with three attorneys, each of them with extensive experience in employment law. Ms. Casperson's hourly rate is $360; Ms. Ulrich's is $310; and Mr. Dustin's is $280. Defendants have not challenged these hourly rates, and the Court finds them to be reasonable, particularly since counsel took the case on a contingent fee basis. *See Morales*, 96 F.3d at 364 n.9.

The number of hours billed is more contentious, but the Court concludes that 852.1 hours is reasonable. It is true that Gonzales only prevailed on two of his claims and received approximately twenty-five percent of the damages sought. But, a jury verdict of close to half a million dollars is still an formidable result, especially given the complex nature of the case. The intersection between ADA protections and Department of Energy regulations—an issue not raised by Battelle until the eve of the trial—created difficult and time-consuming legal questions. The case was also document-intensive, requiring the review of voluminous employment records to establish comparator evidence. All this supports the reasonableness of the attorneys' billed hours.

**Memorandum Decision and Order - 10**

In addition to seeking an across-the-board reduction to Gonzales' fees, Battelle challenges $33,768 in fees incurred seeking discovery on comparator information to support race-based claims. Battelle contends that this discovery was unnecessary because counsel spent less than ten hours reviewing the materials, and Gonzales' racial discrimination claims ultimately failed. But this argument misrepresents both the nature of the evidence and the hours expended reviewing it. First, the comparator evidence led to two witnesses being called at trial and informed Gonzales' success on his ADA claims. Second, a significant amount of the time dedicated to the review of those documents was reflected in the award for attorneys' fees associated with the motion for contempt and therefore excluded from the present calculations. *Ulrich Decl.* ¶ 16, Dkt .161-2; *see* Dkt. 63. Third, Battelle's accusation that Gonzales sought the discovery merely to increase the expense of litigation ignores the fact that it was primarily Battelle's intransigence that drove up costs. There is no justification for excluding $33,768 associated with the discovery.

Thus, the lodestar figure is $282,324. The Court sees no reason to depart from this presumptively reasonable award. As already explained, the verdict for Gonzales, though far from everything he sought, can fairly be characterized as excellent. The rates charged and hours expended were reasonable in light of the

**Memorandum Decision and Order - 11**

unusual complexities of the case. Therefore, the Court will award $282,324 in attorneys' fees to Gonzales as the prevailing party.

4. **Costs**

Finally, Gonzales seeks costs and litigation expenses of $9,117.95.

Under the ADA, a prevailing plaintiff is entitled to recover statutory costs and reasonable non-statutory litigation expenses. *See* 42 U.S.C. § 2000e-5k. Gonzales' statutory costs of $1,491.74 are documented in the Bill of Costs (Dkt. 162). Counsel complied with the meet and confer requirements of Local Rule 54.1, and Battelle did not object. The Court will grant Gonzales' request for costs.

Gonzales also seeks $7,626.21 in litigation expenses, primarily representing service fees for serving subpoenas, expert witness fees, and travel and lodging for the trial. *Ulrich Decl.*, Ex. B, Dkt. 161-4. Battelle has not made any objections. The Court finds that these expenses are reasonable.

Consequently, the Court will Gonzales award $9,117.95 in total costs.

## ORDER

1. Plaintiff's Motion for Reinstatement or, in the Alternative, Front Pay (Dkt. 160) is **GRANTED IN PART and DENIED IN PART** as follows:

    a. Defendant is **ordered** to reinstate Plaintiff.

    b. Plaintiff is **awarded** prejudgment interest in the amount of

**Memorandum Decision and Order - 12**

   $99,894.65.

2. Plaintiff's Motion for Reasonable Attorney Fees and Costs (Dkt. 161) is **GRANTED**. Therefore,

   a. Plaintiff is awarded attorneys' fees of $282,324.00 and costs of $9,117.95.

DATED: February 4, 2025

_____
B. Lynn Winmill
U.S. District Court Judge

**Memorandum Decision and Order - 13**