UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROMAN T. GONZALES,<br><br>Plaintiff,<br><br>v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br>Defendant. | Case No. 4:20-CV-00102-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion for Supplemental Fees (Dkt. 218), Plaintiff's Renewed Motion for Attorney's Fees and Costs on Appeal (Dkt. 230), and Defendant's Motion to Release Supersedeas Bond (Dkt. 215). For the reasons described below, the Court will grant each motion in part and deny each in part. The Court will award $39,412.75 in supplemental attorneys' fees, and $88,491.80 in attorneys' fees and $819.46 in costs on appeal. The Court will also release the supersedeas bond.

## BACKGROUND

Roman Gonzales brought this action after Battelle Energy Alliance terminated him from his position as a Security Police Officer. In August 2024, a jury found for

Gonzales on his disability discrimination and retaliation claims, awarding $435,447.18 in back pay and $25,000.00 for emotional distress. The Court entered judgment on September 20, 2024. *See* Dkt. 159.

On October 4, 2024, Gonzales moved for reinstatement, or in the alternative front pay, and for prejudgment interest, and separately moved for attorneys' fees and costs, seeking $282,324.00 in fees and $9,117.95 in costs. *See* Dkts. 160, 161. Battelle then moved for judgment as a matter of law, raising for the first time an argument that the non-justiciability doctrine of *Department of Navy v. Egan*, 484 U.S. 518 (1988), barred review of Gonzales' claims. *See* Dkt. 165. On February 3 and 4, 2025, the Court denied Battelle's motion and granted Gonzales' motions for reinstatement and for attorneys' fees and costs, awarding fees at hourly rates of $360 for Ms. Casperson, $310 for Ms. Ulrich, and $280 for Mr. Dustin. *See* Dkts. 175, 176.

Battelle moved to stay the monetary portion of the judgment pending appeal and posted a supersedeas bond to do so. *See* Dkt. 178. After Gonzales objected that the initial bond was too small, Battelle increased it to $1,064,729.72, or 125 percent of the money judgment, and the Court approved the increased bond and stayed execution of the money judgment on March 13, 2025. *See* Dkts. 188-1, 191. On February 20, 2025, the Court entered an Amended Judgment reflecting the reinstatement order and the interest, fee, and cost awards. *See* Dkt. 182. Battelle appealed. *See* Dkt. 189.

While the appeal was pending, Battelle moved to stay the reinstatement order, first in this Court, where the motion was denied on June 2, 2025, and then in the Ninth

Circuit under Federal Rule of Appellate Procedure 8, where it was denied on August 27, 2025. *See* Dkts. 195, 198. In the interim, on July 30, 2025, Gonzales moved this Court to hold Battelle in contempt for failing to reinstate him. *See* Dkt. 196. Battelle reinstated Gonzales on September 22, 2025, following negotiations over the terms of his return. *See* Dkt. 203. The Court denied the contempt motion on February 3, 2026, finding that Battelle had substantially complied with the reinstatement order. *See* Dkt. 208.

On April 16, 2026, the Ninth Circuit affirmed the judgment in full. *See* Dkts. 213, 214. Its mandate issued on May 8, 2026. *See* Dkt. 216. Battelle did not seek rehearing. Instead, it paid the judgment in two installments, the first on May 1, 2026, covering the back pay award, and the second on May 21, 2026, covering the remaining amounts due, including post-judgment interest calculated through May 8, 2026. *See* Dkts. 222-1, 222-3. Battelle asked Gonzales to stipulate to release of the bond so it could access the cash collateral securing it, an arrangement Gonzales declined. *See* Dkt. 219-1.

Three motions followed. On April 30, 2026, Battelle moved this Court to release the supersedeas bond. *See* Dkt. 215. On May 14, 2026, Gonzales moved the Ninth Circuit for his appellate attorneys' fees under Circuit Rule 39-1.6, seeking $95,501.60 in fees and $819.46 in costs. *See* Dkt. 230-2. On May 15, 2026, Gonzales moved this Court for supplemental fees of $41,709.10 for post-trial work performed between his October 2024 fee petition and the start of appellate briefing. *See* Dkt. 218.

The Ninth Circuit transferred consideration of appellate fees to this Court on June 5, 2026, and denied Gonzales' motion there as moot. Gonzales then renewed that motion in this Court. *See* Dkt. 230. All three motions are now fully briefed.

## ANALYSIS

### A. Supplemental Attorneys' Fees

#### 1. Legal Standard

The ADA permits a prevailing party to recover reasonable attorneys' fees, including fees for post-judgment work that is "useful and of a type ordinarily necessary" to secure the litigation's final result. 42 U.S.C. § 12205; *see Stewart v. Gates*, 987 F.2d 1450, 1452 (9th Cir. 1993). To calculate the reasonable fee, courts apply the "lodestar" method, which is the "number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar computation is a presumptively reasonable amount. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The moving party has the burden to produce evidence that the rates and hours worked are reasonable. *Id.* at 1202. After computing the lodestar, the district court is to assess whether additional considerations require the court to adjust the figure. *See Caudle v. Bristow Optical Co. Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000).

The prevailing party may also recover reasonable "out-of-pocket expenses" that would "normally be charged to a fee paying client." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (internal quotation marks omitted).

**2. Gonzales' Entitlement to Post-Judgment Attorneys' Fees**

Battelle first argues that the Court should deny supplemental fees outright because Gonzales already recovered $282,324.00, and any additional award would be unjust. The Court disagrees. A prevailing plaintiff in a civil rights action should ordinarily recover a fee unless special circumstances would render an award unjust. *Hensley*, 461 U.S. at 429; *see also Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) ("A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." (internal quotation marks omitted)). The "special circumstances" exception "applies only in unusual cases." *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008), overruled on other grounds by *Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (en banc). "[A] court's discretion to deny fees . . . is very narrow and . . . fee awards should be the rule rather than the exception." *Id.* (citation and quotation marks omitted). "The defendant has the burden of showing that special circumstances warrant a denial of fees, and the defendant's showing must be a strong one." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1055 (9th Cir. 2013) (citation, quotation marks, and brackets omitted).

The size of a prior fee award is not itself a special circumstance. Nothing in the statute caps an otherwise reasonable fee at some multiple of the underlying judgment, and civil rights fee awards need not be proportionate to the damages recovered. *City of Riverside v. Rivera*, 477 U.S. 561, 574-80 (1986). And the Ninth Circuit has never

held that a district court may deny a fee award to a prevailing civil rights plaintiff "solely because the court finds the fee request to be so excessive as to shock its conscience." *Mendez*, 540 F.3d at 1127. Even if it had, that standard would require a showing that the request was made in bad faith, "such as billing outrageous numbers of hours on simple matters." *Id.* Battelle makes no such showing. Its real objections go to the reasonableness of the rates and hours claimed, which is the question the lodestar analysis answers, and the Court addresses them below rather than refusing to award supplemental fees outright.

Battelle separately argues that most of the work Gonzales describes falls outside the category of compensable post-judgment work because it did not involve monitoring, implementing, or enforcing a judgment, but was instead the ordinary motion practice that accompanies an appeal. That reads the standard too narrowly. The relevant standard reaches any post-judgment proceeding that is useful and ordinarily necessary to secure the litigation's final result, not only monitoring and enforcement work. *See Stewart*, 987 F.2d at 1452. Opposing Battelle's motion for judgment as a matter of law, opposing Battelle's motions to stay the judgment, and preparing the amended judgment the Court itself required were all necessary steps to secure the benefit of the jury's verdict once Battelle chose to contest it. That Battelle, rather than Gonzales, generated most of this work does not make it uncompensable. *See id.* at 1454 (fees may be awarded for work performed in successfully defending an award).

### 3. Amount of Award

Gonzales seeks $41,709.10 in supplemental fees. To determine the reasonableness of the fees sought, the Court considers the reasonableness of the rates charged and the hours expended by Gonzales' attorneys before calculating the lodestar amount. *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). The party seeking fees has the burden of establishing that the claimed rates and hours expended are reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

#### a. Reasonable Rate

The reasonableness of an hourly rate depends on the rate "in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The relevant community is the forum in which the Court sits, and for this case that is the District of Idaho, and more particularly the Idaho Falls area where counsel practice. *See Smith Roofing & Siding, L.L.C. v. Smith*, No. 4:23-CV-00310-DCN, 2024 WL 1308983, at *10 (D. Idaho Mar. 26, 2024). Rate decisions from elsewhere in this District inform that inquiry, and the Court may also draw on its own knowledge of the rates charged in comparable cases. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

The Court previously found $360 an hour for Ms. Casperson, $310 an hour for Ms. Ulrich, and $280 an hour for Mr. Dustin to be reasonable rates in this litigation, and Battelle did not object to those rates at the time. *See* Dkt. 176 at 10. Gonzales now

requests $420, $385, and $375, arguing that counsel's previous rates "were substantially below the market for attorneys of comparable tenure and experience." *See* Dkt. 230-2 at 5. Battelle asks the Court to hold counsel to the earlier figures. It argues that rates at or above $400 belong to the top of the Boise market, that Casperson & Dustin PLLC is neither a regional nor a national firm, and that Gonzales has offered no evidence supporting the increase beyond a confidential arbitration award.

Battelle's argument about the size and character of counsel's firm misapprehends the inquiry. What matters is the rate charged in the community for comparable work by attorneys of comparable skill, experience, and reputation. *Camacho*, 523 F.3d at 979. Whether the lawyer practices at a national firm, a regional firm, or a three-attorney office in Idaho Falls is not the test. A reasonable rate compensates the lawyer for her experience, skill, and the work performed; it is not a measure of her firm's overhead. The arbitration award the parties spar over proves little either way. Battelle's counsel there sought $385 an hour on nine years of experience and was awarded $315. If it shows anything, it is that Battelle's own counsel considered a rate approaching $400 appropriate for a lawyer with roughly a third of Ms. Casperson's experience.

This Court has previously recognized reasonable rates in the Idaho Falls market similar to the rates Gonzales requests here. *See TB Holding Co., LLC v. J&S Siding Co.*, No. 4:22-cv-00307-BLW, 2024 WL 3676945, at *4 (D. Idaho Aug. 6, 2024). In

*TB Holding*, the Court awarded a partner with 22 years of experience in patent litigation a rate of $425 per hour, *id.* at *4, and an associate with roughly six years of general litigation experience a rate of $345 per hour—a rate the associate had garnered in the Boise market, and which the Court did not discount for the Idaho Falls market, *id.* at *3 (*citing Bundy v. St. Luke's Health Sys. Ltd.*, No. 1-23-cv-00212-DCN, 2023 WL 7282880, at *4 (D. Idaho Nov. 2, 2023) (approving associate's billing rate of $346.50 for the Boise market)). The same decision described the prevailing market rate for a partner with thirty years of experience as $450. *Id.* (*citing Composite Resources, Inc. v. Rood*, No. 2:21-cv-00500-BLW, 2023 WL 2354831, at *4 (D. Idaho Mar. 3, 2023)). Ms. Casperson has twenty-seven years of litigation experience. *See* Dkt. 218-2 ¶ 13. Holding her to $360 would leave a lawyer of that seniority barely above the rate this Court approved two years ago for an attorney less than six years into practice, and nearly $100 below the rate it set for a partner with three years less experience than she has.

Battelle's reliance on the observation in *TB Holding* that rates at or above $400 sit at the higher end of reasonable rates does not carry the weight Battelle gives it. That observation traces to *Balla v. Idaho State Board of Correction*, No. CV-81-1165-S-BLW, 2016 WL 6762651, at *12 (D. Idaho Feb. 1, 2016), which described $435 as at the higher end of the Boise legal market a decade ago. More recent decisions in this District have approved rates well above that figure. *See Champine v. Ryan*, No. 1:23-cv-00338-DCN, 2026 WL 1847099, at *2 (D. Idaho June 26, 2026) (approving $500

an hour as acceptable given the experience of counsel, and collecting cases); *SBP LLLP v. Hoffman Construction Co. of America*, 2025 WL 959517, at *4 (D. Idaho 2025) (finding $430 to $460 reasonable for an attorney with more than forty years in the field); *Bundy*, 2023 WL 7282880, at *4 (approving rates ranging from $346 to $540). A ceiling fixed by reference to the 2016 market does not describe the market in which counsel practice today.

Battelle also leans on *Ivanov v. Fitness Elite Training Ctr., Inc.*, No. 1:20-cv-00380-CWD, 2024 WL 2978627, at *4 (D. Idaho June 13, 2024), but that decision does not compel a different result. The rate approved there—$400 an hour for an attorney with twenty-four years of experience litigating employment cases—was that attorney's standard billing rate, and the court found it comparable to rates charged for similar work by attorneys of similar experience. The court did not describe $400 as the most such experience could command. Ms. Casperson has three more years of experience than the attorney in *Ivanov*, and two years have passed since that decision.

Battelle's contention that Gonzales has offered no market evidence overlooks the declaration of Erika Birch, submitted with the original fee petition and incorporated into the present request. Ms. Birch is a partner at a boutique plaintiff-side employment firm, has practiced continuously since 2000, and opened her firm's Idaho office in 2008. *See* Dkt. 218-2 at 7. She attests that she is familiar with the rates attorneys in Idaho, including Southeast Idaho, customarily and regularly charge in employment litigation, a familiarity drawn from her contacts with the small number of

plaintiff's employment lawyers in the state and from her firm's practice of tracking fee applications and awards in this Court. *Id.* at 9. She describes counsel as having extensive experience and an excellent reputation in Idaho for high-quality work in employment law, and she explains that very few attorneys in the state, and fewer still in Southeast Idaho, are willing or able to take complex employment cases on a contingent fee basis. *Id.* In her opinion, counsel's rates are reasonable in light of their experience, the skill the work demands, that scarcity, and the market in Southeast Idaho and in Idaho generally. *Id.* at 9-10. Ms. Birch gave that opinion in October 2024, when counsel sought lower rates, so it does not speak directly to the figures requested now. But it establishes the character of the market, counsel's standing in it, and the contingency risk this Court treated as significant in approving the earlier rates. *See* Dkt. 176 at 10.

Counsel's credentials bear out that assessment. Ms. Casperson was licensed in 1999, clerked for the Chief Judge of the Western District of Missouri, practiced in the national labor and employment section of a large Kansas City firm, and has practiced employment law in Idaho continuously since December 2002. *See* Dkt. 218-2 at 2. Ms. Ulrich was licensed in Idaho in 2008 and practiced complex civil litigation with an employment focus for roughly seventeen years before taking the bench as an Idaho district judge. *Id*. at 3. Mr. Dustin graduated from law school in 2011 and has spent much of the fifteen years since practicing labor and employment law. *Id.* at 3-4. Measured against the benchmarks described above—$345 for six years of experience,

$425 for twenty-two, $340 for ten, and $450 for thirty—requested rates of $420 for twenty-seven years of practice, $385 for seventeen, and $375 for fifteen fall comfortably within what this District has found reasonable.

The Court will set the reasonable hourly rates at $420 for Ms. Casperson, $385 for Ms. Ulrich, and $375 for Mr. Dustin. Battelle observes that Ms. Ulrich's and Mr. Dustin's rates rose more steeply in percentage terms than Ms. Casperson's. That is true, but it reflects how far below market all three of the earlier figures were rather than any excess in the present request. The rates approved here remain below what this District has recently allowed for lawyers of comparable seniority, and the Court finds them to be reasonable, particularly since counsel took the case on a contingent fee basis. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996).

**b. Hours Reasonably Expended**

After a court determines the reasonable hourly rate to be applied, the next step is to evaluate whether the hours expended are reasonable. *Hensley*, 461 U.S. at 433. The prevailing party has the burden of submitting time records to justify the hours claimed. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), as amended by 808 F.2d 1373 (9th Cir. 1987). "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.* (*citing Hensley*, 461 U.S. at 433-34). "Hours that are not properly billed to one's client also are not properly billed to one's adversary[.]" *Hensley*, 461

U.S. at 434. "By and large," however, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Having reviewed the time entries provided by Gonzales' attorneys, the Court has determined that the majority of the hours expended were reasonable, with two exceptions. First, Battelle correctly identifies an entry dated April 3, 2025, for "finalize additional discovery requests," reflecting 0.76 hours of Ms. Ulrich's time and $292.60 in fees, that bears no apparent connection to the post-trial work described in the motion. Gonzales concedes the point, and the Court will exclude this entry.

Second, the time Gonzales' counsel spent drafting an opposition to Battelle's motion to stay execution of the money judgment warrants some reduction. Federal Rule of Civil Procedure 62 entitled Battelle to an automatic stay upon posting an approved bond, and the Court ultimately granted that stay. *See* Dkt. 191. To that extent, the time counsel spent opposing the stay did not change the outcome. But the opposition was not without effect, and it appears to have prompted Battelle to increase the bond by more than $85,000 before the Court ruled. *See* Dkt. 188. The better course is a reduction reflecting Gonzales' partial success on this discrete task, rather than denying the time altogether. *See Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 909 (9th Cir. 1995) (affirming a reduction of fees-on-fees to reflect the ratio of a party's success).

The Court is not persuaded, however, that Ms. Casperson's failure to delegate more work to Ms. Ulrich and Mr. Dustin amounts to overstaffing warranting a separate reduction. Casperson & Dustin PLLC is a three-attorney firm, and the record reflects that Ms. Ulrich and Mr. Dustin were engaged on other matters during the relevant period. A small firm's staffing choices are not unreasonable merely because a larger firm might have divided the work differently, and the Court generally defers to the prevailing lawyer's professional judgment as to how the case should be staffed. *Moreno*, 534 F.3d at 1112. Likewise, the Court declines to reduce counsel's hours on the ground that the time entries are impermissibly vague. The Court has reviewed counsel's billing entries and finds them sufficiently detailed. *Cf. Davis v. City and County of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992) (warning against imposing too high a standard of documentation on fee claimants), *vacated in part*, 984 F.2d 345 (9th Cir. 1993).

Weighing these considerations, the Court will exclude the April 3, 2025 entry outright and will reduce by half the hours counsel spent opposing the motion to stay execution of the money judgment. Reviewing the billing records, the Court identifies 9.6 hours devoted to that opposition, 8.9 billed by Ms. Casperson and 0.7 billed by Ms. Ulrich. *See* Dkt. 218-2. Those hours will be reduced to 4.45 and 0.35.

**4. Lodestar Calculation**

Applying the reasonable hourly rates and the reductions described above yields the following lodestar:

| Attorney/Paralegal | Hours | Hourly Rate | Total |
|---|---|---|---|
| DeAnne Casperson | 51.55 | $420.00 | $21,651.00 |
| Amanda E. Ulrich | 30.55 | $385.00 | $11,761.75 |
| Ryan S. Dustin | 16 | $375.00 | $6,000.00 |
| Total | | | $39,412.75 |

Thus, the lodestar figure is $39,412.75. The Court sees no reason to depart from this presumptively reasonable award. Therefore, the Court will award Gonzales $39,412.75 in supplemental attorneys' fees.

### B. Attorneys' Fees and Costs on Appeal

#### 1. Legal Standard

The legal standard for awarding appellate attorneys' fees is the same as the standard governing a district court's fee decision on the merits. *Franceschi v. Schwartz*, 57 F.3d 828, 832 (9th Cir. 1995). "Generally, a party that is entitled to an award of attorneys' fees in the district court is also entitled to an award of attorneys' fees on appeal." *Legal Voice v. Stormans Inc.*, 757 F.3d 1015, 1016 (9th Cir. 2014). The Ninth Circuit affirmed the judgment on every issue Battelle raised, so Gonzales is the prevailing party on appeal and entitled to a reasonable fee, calculated under the same lodestar framework applied above.

#### 2. Gonzales' Entitlement to Fees on Appeal

Battelle argues the Court should exercise its discretion to deny appellate fees altogether because Battelle's appeal presented a novel question, whether the non-

justiciability doctrine of *Department of Navy v. Egan* extends to security-related fitness determinations under 10 C.F.R. § 1046, and because the Ninth Circuit's published resolution of that question benefited the development of the law. Battelle relies on *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412 (1978), and *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

Neither case supports denying fees to a prevailing plaintiff. *Christiansburg* addressed when a court may award fees against a losing plaintiff in favor of a prevailing defendant, a standard long recognized as asymmetric with the standard governing a prevailing plaintiff's fee request. *Christiansburg*, 434 U.S. at 421-22. *Fogerty* involved the Copyright Act's fee provision, not the ADA, and does not displace the settled rule that a prevailing civil rights plaintiff should ordinarily recover fees absent special circumstances. *Jankey*, 537 F.3d at 1130. That Battelle's appeal was not frivolous, and that the Ninth Circuit's opinion clarified an unsettled question, are unremarkable features of ordinary appellate litigation. They do not amount to a special circumstance that would make a fee award unjust. The novelty of the issue is relevant instead to whether the hours counsel spent researching and briefing it were reasonable, a question addressed below.

**3. Amount of Award**

Gonzales seeks $95,501.60 in fees and $819.46 in costs on appeal. The Court applies the same two-step lodestar analysis it applied to the supplemental request,

beginning with the reasonable hourly rate and then turning to the hours reasonably expended.

**a. Reasonable Rate**

For the reasons explained above, the Court will apply the same hourly rates—$420 for Ms. Casperson, $385 for Ms. Ulrich, and $375 for Mr. Dustin—to the appellate fee request. Battelle does not challenge the $165 hourly rate requested for paralegal Rudee Singer, and the Court finds it reasonable.

**b. Hours Reasonably Expended**

Next, the Court considers the reasonableness of the hours expended on appeal. Battelle argues the lodestar amount is inflated, pointing first to certain time entries it says are unrelated to the appeal. Battelle identifies sixteen entries, totaling $5,454.70, relating to Gonzales' motion for contempt in this Court and to his opposition to release of the supersedeas bond, both of which were separate proceedings in this Court. Gonzales responds that the reinstatement issue underlying the contempt motion was itself before the Ninth Circuit, and that opposing release of the bond was necessary to defend the judgment.

The Court agrees with Battelle that these entries do not belong in an appellate fee award. Ninth Circuit Rule 39-1.6 authorizes fees for work performed in the Court of Appeals. That Battelle's compliance with reinstatement bore some relationship to the issues on appeal does not convert a contempt proceeding filed and resolved in this Court into appellate work. Nor does opposing release of the bond, a question about

security for an already affirmed judgment, fall within the scope of defending that judgment before the Ninth Circuit. *See Stampfli v. Susanville Sanitary Dist.*, No. 2:20-CV-01566 WBS DMC, 2024 WL 5159627, at *1 (E.D. Cal. Dec. 18, 2024) (declining to sort commingled district court and appellate entries). The Court will exclude this time from the appellate fee award. Whether that time might be recoverable through a separate, properly noticed request is not before the Court, and the Court expresses no view on the question.

Excluding those sixteen entries removes 12.99 hours of Ms. Casperson's time, reducing her claimed hours from 152.13 to 139.14. Battelle argues the remaining hours are still excessive, pointing to *Suzuki v. Yuen*, 678 F.2d 761, 762 (9th Cir. 1982), which found roughly 138 hours reasonable for appellate briefing that built on an existing summary judgment record, and to a similar appeal Gonzales' counsel handled in 2025, in which counsel sought fees for roughly 114 hours.

Neither comparison persuades the Court that the remaining hours are unreasonable. Unlike *Suzuki*, this case involved no summary judgment briefing for counsel to draw on, so the appellate briefing required more original work. The record on appeal exceeded 2,100 pages, and Battelle's opening brief raised for the first time its exhaustion argument under § 1046, which neither party had previously briefed in this Court. The novelty Battelle presses as a reason to deny fees altogether cuts the other way here. An appeal that required the Ninth Circuit to resolve a question of first

impression, in a published opinion, is not one this Court would expect counsel to defend in the time a routine single-plaintiff appeal would demand.

Battelle's remaining objections fail for the same reasons they failed as to the supplemental request. Battelle again faults Ms. Casperson for not delegating more of the briefing to Ms. Ulrich and Mr. Dustin. As explained above, a three-attorney firm's staffing choices are not unreasonable merely because a larger firm might have divided the work differently, and the Court defers to the prevailing lawyer's professional judgment on that question. *Moreno*, 534 F.3d at 1112. Battelle also argues that entries such as "continue research and drafting Response Brief" and "continue preparing for oral argument" are too vague to permit review. The Court has reviewed those entries and finds them sufficiently detailed to assess the reasonableness of the time claimed. *Cf. Davis*, 976 F.2d at 1542. Apart from the non-appellate entries excluded above and the travel time addressed next, the hours counsel expended on appeal were reasonable.

**c. Travel Time**

Ms. Casperson block-billed her travel to and from oral argument in Portland. The outbound entry, for 12.8 hours, describes travel to Portland and analysis of cases during travel. The return entry, for 7.4 hours, describes only travel back to Idaho Falls. See Dkt. 230-3. Gonzales does not dispute that both entries are block-billed, but he explains that a layover allowed substantive research on the outbound leg, while the return leg involved no identified work. The Court agrees that a distinction between the two legs is appropriate. *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-

HSG, 2020 WL 5798152, at *10 (N.D. Cal. Sept. 29, 2020) (courts frequently reduce undifferentiated travel time by half). The Court will treat the outbound 12.8 hours as fully compensable and will reduce the return 7.4 hours by half, for 16.5 compensable travel hours rather than 20.2.

#### d. Costs

Battelle does not contest Gonzales' request for $819.46 in non-taxable travel expenses, and the Court finds them reasonable and adequately documented. The Court will award this amount in full.

### 4. Lodestar Calculation

Accounting for the exclusion of the non-appellate entries and the travel-time adjustment, and applying the hourly rates set above, the lodestar is as follows:

| Attorney/Paralegal | Hours | Hourly Rate | Total |
|---|---|---|---|
| DeAnne Casperson | 135.44 | $420.00 | $56,884.80 |
| Amanda E. Ulrich | 67.7 | $385.00 | $26,064.50 |
| Ryan S. Dustin | 12.8 | $375.00 | $4,800.00 |
| Rudee Singer | 4.50 | $165.00 | $742.50 |
| Total | | | $88,491.80 |

Therefore, the Court will award Gonzales $88,491.80 in appellate attorneys' fees and $819.46 in costs, for a total appellate award of $89,311.26.

## C. Release of the Supersedeas Bond

### 1. Release of the Bond

Rule 62(b) allows an appealing party to obtain a stay of a money judgment by posting a supersedeas bond, and the stay takes effect when the court approves the bond. The bond secures the judgment creditor while the appeal is pending. It "protects the prevailing plaintiff from the risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment." *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988). Once the appeal is over and the judgment is paid, the bond serves no further purpose. Courts accordingly release a supersedeas bond "once all appeals are exhausted, the stay has been lifted and full payment has been made." *Rich v. BAC Home Loans Servicing LP*, No. CV-11-00511-PHX-DLR, 2017 WL 1197005, at *1 (D. Ariz. Mar. 30, 2017) (*quoting Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. 00-CV-35-LRR, 2006 WL 4757279, at *3 (N.D. Iowa Aug. 9, 2006)).

Each of those conditions is now satisfied. The Ninth Circuit affirmed, and its mandate issued on May 8, 2026, which dissolved the stay. Battelle has since paid the back pay award, the emotional distress award, prejudgment interest, attorneys' fees, costs, and post-judgment interest. Gonzales' opposition, filed two days before the bulk of that payment, rested on the fact that he had not been paid. That is no longer true.

What remains of Gonzales' objection is his request that the bond stay in place to secure amounts that have not been awarded. That is not what this bond secures. A

supersedeas bond justifies a stay of execution on an existing judgment while the losing party appeals from that judgment. It does not stand as security for whatever else the litigation may later produce. *See V.I.P. Mortg. Inc. v. Gates*, No. CV-24-02865-PHX-DWL, 2026 WL 411766, at *4 (D. Ariz. Feb. 13, 2026) (denying a request to keep bond proceeds on deposit as security for a future award of appellate fees).

The bond obligates the surety if Battelle fails to satisfy the judgment in full, together with costs, interest, and damages for delay, or fails to satisfy the judgment as modified together with such costs, interest, and damages as the court of appeals may adjudge and award. *See* Dkt. 188-1 at 2. That obligation is measured by the judgment appealed from and by any modification of that judgment on appeal. The Ninth Circuit affirmed without modification, and Battelle has paid what the Amended Judgment required. The fee awards entered today are new awards rather than a modification of the judgment the bond secured, and the reference in the bond to damages for delay addresses the delay in satisfying the money judgment caused by the appeal, which post-judgment interest has compensated.

The damages Gonzales sought for the delay in his reinstatement stand on similar footing. Whether Battelle complied with the reinstatement portion of the Amended Judgment was contested and was the subject of his motion for contempt, which the Court has since resolved. No such damages were awarded, and the Court will not require Battelle to keep security posted against amounts that were never

ordered. Nothing in the record suggests that Battelle could not pay whatever else it may be ordered to pay. A company that has just satisfied a judgment approaching $900,000 does not present the risk of an uncollectible judgment that a supersedeas bond exists to guard against.

The Court declines one part of the relief Battelle requests. Battelle asks for an order declaring the Amended Judgment satisfied. Some post-judgment interest remains outstanding, as explained below. Releasing the bond resolves the question of security. It does not adjudicate whether Battelle has done everything the Amended Judgment required of it.

One consequence of releasing the bond deserves mention. Gonzales has held that security since March 2025, and he gives it up on the same day the Court enters two new fee awards against Battelle. The Court has discretion to fix the time for compliance with the relief it orders, and it will do so here. Battelle will pay the supplemental and appellate fee awards, together with the costs awarded on appeal, within fourteen days of the release of the bond. Battelle has represented that it is prepared to pay what it owes, and nothing in the record suggests that fourteen days is impractical. Post-judgment interest on those awards runs from the entry of this Order, which is the first order to fix the amounts owed. *See* 28 U.S.C. § 1961(a).

**2. Post-Judgment Interest**

Post-judgment interest is mandatory. Section 1961(a) provides that interest shall be allowed on any money judgment in a civil case recovered in a district court,

and § 1961(b) provides that the interest shall be computed daily to the date of payment. 28 U.S.C. § 1961. The statute fixes the endpoint at payment. Its purpose is to compensate the prevailing party for the loss of the use of money owed to him between the ascertainment of damages and the defendant's payment. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990).

Battelle asks the Court to move that endpoint. It contends that interest should have stopped on May 7 or May 8, 2026, because it stood ready to pay when the mandate issued and would have paid then had Gonzales agreed to release the bond. Battelle offers no authority for cutting off statutory interest before payment, and *V.I.P. Mortgage* does not supply it. That court explained that a judgment creditor should not be made to wait for money he is owed while interest continues to accrue. It did not hold that interest stops running before the creditor is paid.

Battelle's readiness to pay was also conditional. What it proposed was that Gonzales first stipulate to release the bond, after which Battelle would pay from the returned collateral. A judgment creditor need not surrender his security in order to be paid, and an offer conditioned on his doing so does not stop interest from running. Gonzales' alternative, that the surety disburse the collateral to him directly and the bond be released in corresponding amounts, was a reasonable one. Battelle ultimately paid the judgment without using the collateral.

Battelle's argument about the three days at issue on the back pay award is also unpersuasive. Battelle faults Gonzales' counsel for asking that payment be made by

check rather than deposited into Gonzales' account. Paying a judgment creditor through his lawyer is a common practice, and the few days of mail time that followed reflect the method Battelle chose. Interest on the back pay award ran until Gonzales received payment on May 4, 2026.

The practical consequence is modest. Post-judgment interest accrued on each component of the Amended Judgment until that component was paid, which means May 4, 2026 for the back pay award and May 21, 2026 for the remainder. Because Battelle computed its May 21 payments as of May 8, 2026, an additional increment of interest appears to remain unpaid. The parties shall meet and confer within seven days of entry of this Order to determine the appropriate amount of that remaining interest. The outstanding increment is not a reason to keep the bond in place, given that Battelle has now demonstrated both the willingness and the ability to pay.

**ORDER**

**IT IS ORDERED that:**

1. Plaintiff's Motion for Supplemental Fees (Dkt. 218) is **GRANTED IN PART and DENIED IN PART**. Plaintiff is awarded supplemental attorneys' fees of $39,412.75.

2. Plaintiff's Renewed Motion for Attorney's Fees and Costs on Appeal (Dkt. 230) is **GRANTED IN PART and DENIED IN PART**. Plaintiff is awarded appellate attorneys' fees of $88,491.80 and costs of $819.46.

3. Battelle shall pay Plaintiff the attorneys' fees and costs awarded in paragraphs 1 and 2 within fourteen days of entry of this Order.

4. Defendant's Motion to Release Supersedeas Bond (Dkt. 215) is **GRANTED IN PART and DENIED IN PART**.

a. The supersedeas bond posted by Battelle (Dkt. 188) is RELEASED and EXONERATED effective upon entry of this Order. The surety is DISCHARGED from any further obligation under the bond, and any cash or collateral held in connection with the bond may be released.

b. The parties shall meet and confer within seven days of entry of this Order to determine the amount of post-judgment interest on the Amended Judgment that accrued after May 8, 2026, and remains unpaid. Battelle shall pay that amount within fourteen days of entry of this Order.

DATED: August 19, 2026

B. Lynn Winmill
U.S. District Court Judge